THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANDRE YOUNG, Defendant-Appellant.

First District (1st Division)   No. 1—98—0343

Opinion filed June 30, 1999.

Patrick T. Murphy, Public Guardian, of Chicago (Eileen T. Pahl, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and Miles J. Keleher, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE O'BRIEN delivered the opinion of the court:

Following a bench trial, the trial court found defendant Andre Young guilty of aggravated battery with a firearm and two counts of aggravated battery. The court sentenced Young to eight years for aggravated battery with a firearm. Young appeals.

## FACTS

On May 18, 1996, the victim, Steve Black, was shot in the stomach during an altercation at a house party. The shooting was witnessed by Anthony Jones and the victim's brother Rodney. The victim and Anthony Jones identified defendant as the shooter. Jones and the victim knew defendant from school and from the neighborhood by his real name and by his nickname, "Dre."

Approximately one week after the shooting, the victim's brother observed the shooter driving a grey, "police style" Chevy past the victim's home. The victim confirmed his brother's identification and further identified a front seat passenger in the car as Jerry Dean. The victim's mother then telephoned police and informed them that the shooter was driving around the victim's neighborhood in a grey, "police style" Chevy with a black male passenger. Almost immediately after receiving this tip, police detective Banahan stopped a grey, "police style" Chevy with two black men in the front seat within a block of the victim's home. Detective Banahan was joined at the location of the stop by Officer Shaeffer and a third police car.

The defendant had been driving the stopped vehicle. The defendant tendered his driver's license to Detective Banahan and offered that his nickname was "Dre." Detective Banahan then took defendant's driver's license to the victim's house, where a photo identification was obtained. During this time, Officer Shaeffer and the third police car remained with the defendant at the scene of the stop. Detective Banahan returned to the defendant's car within five minutes and placed him under arrest.

## DISCUSSION

On appeal, we consider: (1) whether police had reasonable suspicion to justify a *Terry* stop of defendant's car; (2) whether police exceeded the bounds of a *Terry* stop and placed defendant under arrest without probable cause; (3) whether defendant was deprived of effective assistance of counsel; (4) whether the admissible evidence was sufficient to prove defendant guilty beyond a reasonable doubt; and (5) whether the mittimus should be amended to reflect defendant's eligibility for day-to-day good-time credit.

First, defendant argues a tip relayed through the victim's mother that the shooter was driving a grey Chevy in the vicinity of the shooting three weeks after the incident was "too vague" to support a valid *Terry* stop. Defendant cites *People v. Washington*, 269 Ill. App. 3d 862, 868, 646 N.E.2d 1268, 1272-73 (1995), *People v. Grotti*, 112 Ill. App. 3d 718, 720, 445 N.E.2d 946, 947 (1983), and *People v. Byrd*, 47 Ill. App. 3d 804, 808, 365 N.E.2d 443, 446 (1977), in support of his argument.

■ Under *Terry v. Ohio*, 392 U.S. 1, 22, 20 L. Ed. 2d 889, 906-07, 88 S. Ct. 1868, 1880 (1968), a police officer may stop and detain a person for temporary questioning if the officer can reasonably infer from the circumstances that the individual has committed a criminal offense. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6; 725 ILCS 5/107—14 (West 1996). We review the trial court's determination of reasonable suspicion *de novo*. *Ornelas v. United States*, 517 U.S. 690, 699, 134 L. Ed. 2d 911, 920, 116 S. Ct. 1657, 1663 (1996); *People v. Foskey*, 136 Ill. 2d 66, 554 N.E.2d 192 (1990).

■ Here, police had information that the victim had been shot by a black male nicknamed "Dre." Police also had information that the victim knew the shooter, had gone to school with him, and that they were known to each other. Police then received a telephone tip originating from the victim's home that the shooter was driving around the victim's neighborhood in a grey, "police style" Chevy with a black male passenger. Police located a grey, "police style" Chevy with two black men in the front seat less than a block from the victim's house almost immediately thereafter. Though this was not enough information to immediately arrest the driver of the grey Chevy (*People v. Tisler*, 103 Ill. 2d 226, 235-37, 469 N.E.2d 147, 153 (1984) (warrantless arrest requires probable cause); *People v. Nash*, 78 Ill. App. 3d 172, 176, 397 N.E.2d 380, 483 (1979) (quashing arrest based on identification of car when informant had not seen shooting incident but obtained information by talking to witness)), it was certainly enough to stop him and conduct a brief investigation into his identity (*Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968) (stop requires only reasonable suspicion); *People v. Fenner*, 191 Ill. App. 3d 801, 806-07, 548 N.E.2d 147 (1989) (validating *Terry* stop based upon tip from citizen informant that two black male occupants of a gold Chevrolet driving on a particular street had just committed robbery)).

*Washington, Grotti,* and *Byrd* are distinguishable. In *Washington,* the arresting officer testified only that the defendant "fit the description" of a robbery suspect. *Washington,* 269 Ill. App. 3d at 866. Here, police knew the shooter was a black male driving a grey, "police style" Chevy around the victim's neighborhood with a black male passenger. In *Grotti,* the arresting officer testified only that the vehicle that the

defendant drove had been seen "hot rodding" two weeks earlier, but it was unclear from this testimony what crime had been committed thereby. *Grotti*, 112 Ill. App. 3d at 720. Here, police knew a crime had been committed, namely, aggravated battery with a firearm. In *Byrd*, the police stopped the defendant a full 24 hours after receiving a radio alert describing an armed robber and 14 blocks from the location of the robbery. *Byrd*, 47 Ill. App. 3d at 808. Here, police stopped the defendant within minutes after receiving a radio alert describing his car and within a block of where it had been seen by the victim.

■ Second, defendant argues police exceeded the bounds of a *Terry* stop and placed him under arrest without probable cause when they "seized" his driver's license and ordered him to wait. Defendant cites *People v. Holveck*, 141 Ill. 2d 84, 97, 565 N.E.2d 919, 924 (1990), and *People v. Adams*, 131 Ill. 2d 387, 402, 546 N.E.2d 561, 568 (1989), in support of his argument.

*Terry* specifically permits a police officer to briefly detain an individual to investigate the possibility of criminal behavior absent probable cause to arrest. *Terry*, 392 U.S. at 20, 20 L. Ed. 2d at 905, 88 S. Ct. at 1879. Thus, mere restraint of an individual does not turn an investigatory stop into an arrest. *People v. Bujdud*, 177 Ill. App. 3d 396, 403, 532 N.E.2d 370 (1988). Rather, it is the length of detention and the scope of investigation that distinguish an arrest from a stop. *Bujdud*, 177 Ill. App. 3d at 403.

Here, defendant agrees that police detained him for less than five minutes. Because the length of the detention was extremely brief and the scope of investigation was limited to obtaining an immediate photo identification of the defendant by the victim, the restraint did not rise to the level of an arrest. *People v. Paskins*, 154 Ill. App. 3d 417, 506 N.E.2d 1037 (1987) (brief detention at site of *Terry* stop not an arrest).

*Holveck* and *Adams* are distinguishable. In *Holveck*, police led the defendant to the station and directed him into an interview room. *Holveck*, 141 Ill. 2d at 96. Here, police allowed defendant to remain sitting in his running automobile at the site of the stop while they conducted a brief investigation. In *Adams*, approximately 20 police cars surrounded the defendant's car and police approached him with their guns drawn. *Adams*, 131 Ill. 2d at 402. Here, there were only three police cars and police never drew their weapons.

Third, defendant contends he was deprived of effective assistance of counsel when defense counsel elicited testimony that bolstered the State's case against him. Specifically, defendant contends defense counsel elicited testimony from the victim that he had made 14 prior consistent statements identifying defendant as the shooter and that the court relied upon this "bolstered" identification in making its decision.

■ To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) that defense counsel's performance fell below an objective standard of reasonableness; and (2) a reasonable probability that but for defense counsel's unprofessional errors, a different result would have been achieved. *Strickland v. Washington*, 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068 (1984); *People v. Albanese*, 104 Ill. 2d 504, 525, 473 N.E.2d 1246, 1255 (1984); U.S. Const., amends. VI, XIV. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

■ Here, defense counsel's proof of prior consistent statements by a witness adverse to defendant's interests introduced evidence into the trial that was otherwise inadmissible (*People v. Tidwell*, 88 Ill. App. 3d 808, 410 N.E.2d 1163 (1980)) and that bolstered the victim's credibility to defendant's detriment (*People v. Lee*, 185 Ill. App. 3d 420, 541 N.E.2d 747 (1989)). Moreover, the trial court relied upon this evidence in reaching its decision, stating:

> "There's testimony further that [the victim] when he was taken away by the paramedics and when he spoke to the doctor at Trinity that he testified that he told them Andre Young was the one who shot him. He also repeated this to the paramedics and testified at Christ Hospital he told them that he was shot in the stomach at a party by a person named Dre.
>
> *   *   *
>
> *** Obviously there's substantial conflict in the versions given by [the victim] and corroborated by Mr. Jones as against the testimony given by the defense, specifically Mr. Young and Miss Morris.
>
> *   *   *
>
> In evaluating this testimony and in its observations of the witnesses and their demeanor and the reasonableness of what has been said as corroborated and perhaps contradicted, the Court finds that the testimony given by [the victim] and Mr. Jones was credible testimony."

Thus, defense counsel's representation fell below an objective standard of reasonableness (*Lee*, 185 Ill. App. 3d 420, 541 N.E.2d 747) and undermined confidence in the outcome of the trial (*Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068). Accordingly, defendant was deprived of effective assistance of counsel.

Fourth, defendant contends that because the initial stop and detention violated *Terry*, and his arrest was without probable cause, the trial court erred in admitting any evidence obtained thereby. Defendant further argues that without such evidence the State did not prove him guilty beyond a reasonable doubt. Because the information known to police gave them reasonable suspicion to support a *Terry*

stop, and because the photo identification of defendant by the victim gave police probable cause to arrest, both the victim's photo identification and the evidence obtained by police during a search incident to defendant's arrest were properly admissible. Because "[a] single witness' identification of the accused is sufficient to sustain a conviction if the witness viewed the accused under circumstances permitting a positive identification" (*People v. Slim*, 127 Ill. 2d 302, 307, 537 N.E.2d 317 (1989)), defendant's fourth contention is without merit.

Where, as here, defendant was deprived of effective assistance of counsel but the evidence was nevertheless sufficient to convict, the proper remedy is to reverse defendant's conviction and remand the matter for a new trial. *People v. Graham*, 179 Ill. App. 3d 496, 534 N.E.2d 1381 (1989) (where evidence sufficient to convict, but prejudicial error infected verdict, defendant entitled to new trial); *People v. Weinger*, 101 Ill. App. 3d 857, 428 N.E.2d 924 (1981) (same); *People v. Swift*, 91 Ill. App. 3d 361, 414 N.E.2d 895 (1980) (same).

Finally, defendant contends the mittimus should be amended to reflect his eligibility for day-to-day good-time credit. Because we reverse and remand for a new trial, we need not address this issue.

Reversed and remanded.

TULLY and GALLAGHER, JJ., concur.