THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. EARL ROSS, Defendant-Appellee.

First District (2nd Division)   No. 1—99—3339

Opinion filed October 17, 2000.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Theodore F. Burtzos, Assistant State's Attorneys, of counsel), for the People.

Rita A. Fry, Public Defender, of Chicago (Suzanne A. Isaacson, Assistant Public Defender, of counsel), for appellee.

JUSTICE COUSINS delivered the opinion of the court:

Following his arrest for home invasion, defendant Earl Ross filed a motion to quash his arrest and suppress evidence, alleging that the police subjected him to an arrest before establishing probable cause in violation of the fourth amendment of the United States Constitution (U.S. Const., amend. IV). Following a hearing, the trial court granted defendant's motion. The State filed a certificate of substantial impairment and contends on appeal that the trial court erred because the police properly stopped defendant pursuant to *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), on reasonable suspicion that he was the person who had just committed the crime and then arrested him minutes later when the victim positively identified him.

At the hearing on defendant's motion, defendant testified that shortly after 11 p.m. on May 26, 1998, he was walking north near 16638 South Marshfield when a police officer ran up behind him and yelled "Stop." Defendant was dressed in a light blue shirt and dark trousers. The officer handcuffed him, placed him in a squad car, and took him "over to Hazel Crest" (1709 West 168th Street), where defendant stood on the street 60 to 75 feet from a house. The officer shined a flashlight in defendant's face and then he was told that the victim had identified him. The officer subsequently recovered one $10

bill, one $5 bill, and fifteen $1 bills from defendant's pocket. Defendant said he saw a man and two women walking ahead of him on Marshfield when the police stopped him. Defendant acknowledged that the victim's house was just south and across an open field from where he was stopped and that part of the field included a well-lighted towing shop surrounded by a cyclone fence.

Brian Tegtmeyer, administrative supervisor for the Hazel Crest police department, testified that at 11:11 p.m. on the night of this incident, the elderly victim, Fred Douglas, telephoned and stated that a black man wearing a blue shirt and pants had just entered his home, choked and robbed him, and left on foot. Other than that description, the victim said he did not know what the assailant looked like. Tegtmeyer radioed the information to patrol officers in the area. Officer Don Preston arrived at the victim's house one minute later and radioed to responding officers that he had seen a suspect matching the initial description. At 11:17 p.m., Sergeant Patrick Murray radioed Tegtmeyer that a subject (defendant) had been stopped. Defendant was taken to the victim's house, positively identified and then arrested at 11:25 p.m.

Officers Preston and Murray testified as follows. As Officer Preston approached the victim's home, he saw defendant, a black man wearing a blue shirt, about one-half block away. Defendant was walking away from Preston on the gravel road bordering the towing shop, an area well-lighted with overhead lights. Preston radioed other patrol officers and relayed the information. There were no other pedestrians in the area. Preston watched as the man walked toward the end of the road where the area darkened. When Preston saw Murray's squad car driving with its headlights off past the spot where defendant had walked, he radioed Murray, directing him back to the correct location. Preston then spoke to the victim, who told him the assailant was 6 feet 2 inches tall and weighed 220 pounds and that he had robbed him of one $5 bill, two $10 bills and fifteen $1 bills.

Meanwhile, Sergeant Murray parked his squad car and proceeded on foot to 167th Street and Marshfield where he saw defendant, who matched the description Officer Preston had radioed. Murray drew his weapon because, although he did not know if defendant was armed, he knew that a home invasion had occurred. He handcuffed defendant, placed him in the squad car, and then radioed Preston and asked him to bring the victim to the scene of the stop for a showup. Preston asked that Murray bring defendant to the home of the 80-year-old victim. The distance between the scene of the stop and the victim's house was one block plus about 100 feet.

When Murray arrived with defendant, he stopped directly in front

of the victim's house and defendant stood on the street under a street-light in the headlights of the squad car. After the victim walked to within two feet of defendant and positively identified him, stating "That's him" or "That's the guy," Murray placed defendant under arrest. Before putting defendant in the squad car, Murray checked defendant's pockets and found bills totaling $30. Only two to three minutes had passed from the time Murray heard the radio dispatch until he stopped defendant. Murray also saw no other pedestrians in the area during the search, but after he stopped defendant several people came out of "shadows," presumably out of a house. After he stopped defendant, Murray patted him down to check for weapons but did not search his pockets until he was identified as the offender.

The trial court stated that it was "troubled by" the testimony of Officer Preston, "who testified that a half block away he saw the blue shirt." The trial court thought "that's impossible to see at night." After being asked by the prosecutor for a finding that defendant was not arrested until after the showup, the court stated, "I'm saying he was arrested at the time they stopped him. He was certainly not free to go. He was not free to go." The trial court granted defendant's motion to quash his arrest and suppress evidence.

■ We review undisputed facts in a motion to suppress *de novo* (*People v. Wallace*, 299 Ill. App. 3d 9, 16 (1998)), but we defer to the trial court's factual findings and credibility determinations and give due deference to the inferences drawn by the trial court and the officers (*People v. Aguilar*, 286 Ill. App. 3d 493, 496 (1997)); see also *People v. Rivera*, 304 Ill. App. 3d 124, 127 (1999) (applying a deferential standard to the trial court's findings of fact and a *de novo* review to the determination of the reasonableness of the officer's conduct).

We must first consider whether the initial *Terry* stop was lawful. We apply a *de novo* standard of review to determine the existence of "reasonable suspicion" supporting a *Terry* stop. *People v. Young*, 306 Ill. App. 3d 350, 353 (1999).

■ To justify a brief investigatory stop of a person in a public place, a police officer must be able to articulate specific facts which, considered with rational inferences from those facts, would lead a reasonable person to believe the action taken was proper. 725 ILCS 5/107—14 (West 1998); *People v. Rivera*, 272 Ill. App. 3d 502, 504-05 (1995). The reasonableness of an investigatory stop may be determined by examining whether the police were aware of specific facts giving rise to reasonable suspicion and whether the police intrusion was reasonably related to the known facts. *People v. Starks*, 190 Ill. App. 3d 503, 506 (1989); accord *United States v. Tilmon*, 19 F.3d 1221, 1224 (7th Cir. 1994). A general description of a suspect coupled with other

specific circumstances that would lead a reasonably prudent person to believe the action taken was appropriate can constitute sufficient cause to stop or arrest. *People v. Robinson*, 299 Ill. App. 3d 426, 431 (1998).

■ The undisputed evidence established that the victim telephoned the police at 11:11 p.m. and said that a black man wearing a blue shirt had just invaded his home, choked and robbed him, and fled on foot. While responding to this call and approaching the victim's home, Officer Preston saw defendant, who matched the description and was about one-half block from the victim's home in a well-lighted area. Preston immediately notified the other responding police officers of defendant's presence and location. Sergeant Murray then observed defendant within minutes of the crime walking a short distance from the victim's home. Defendant fit the victim's description of the offender, and there were no other pedestrians in sight. These facts provided at least the minimal articulable suspicion required to stop defendant. *Rivera*, 272 Ill. App. 3d at 506; see also *People v. Walters*, 256 Ill. App. 3d 231, 236 (1994) (reasonable suspicion can be derived from seeing suspect similar to one believed to be fleeing from a recent crime in the general area where fleeing suspect would be expected to be found, given the time and distance from the crime scene). Therefore, we conclude that the investigatory stop was proper. See *People v. McGee*, 165 Ill. App. 3d 833, 838 (1987); accord *Tilmon*, 19 F.3d at 1225.

Next, we must consider whether the investigatory stop of defendant constituted or was converted into an arrest before the victim identified defendant. The State contends that defendant was not placed under arrest until the victim positively identified him. Defendant asserts that the police effected an arrest by handcuffing him at gunpoint, placing him in a squad car, and transporting him to a showup. There is no dispute that probable cause to arrest existed when the victim positively identified defendant as the assailant.

■ An investigatory stop is distinguished from an arrest based on the length of detention and the scope of investigation following the initial stop, not the initial restraint of movement. *Young*, 306 Ill. App. 3d at 354; *Walters*, 256 Ill. App. 3d at 237; *People v. Bujdud*, 177 Ill. App. 3d 396, 402-03 (1988). The State bears the burden of showing that a seizure based on reasonable suspicion was sufficiently limited in scope and duration. *People v. Brownlee*, 186 Ill. 2d 501, 519 (1999).

■ In the present case, neither the length of detention nor the scope of the investigation transformed the lawful investigatory stop into an arrest. Only eight minutes elapsed between the time the police effectuated defendant's stop and the time of arrest after the victim positively identified defendant according to the undisputed evidence.

At 11:17 p.m., Sergeant Murray radioed that a subject had been stopped. At 11:25 p.m., after obtaining the victim's positive identification of defendant, the arrest was made. Thus, the length of defendant's detention was very brief. See *Young*, 306 Ill. App. 3d at 354 (five-minute detention was "extremely brief").

The scope of the investigation following the *Terry* stop conformed to appropriate procedures because it was brief and determinative in nature. The purpose of a *Terry* stop is to allow a police officer to investigate the circumstances that provoke suspicion and either confirm or dispel his suspicions. *People v. Fasse*, 174 Ill. App. 3d 457, 460-61 (1988). The scope of the investigation must be reasonably related to the circumstances that justified the police interference and the investigation must last no longer than is necessary to effectuate the purpose of the stop. *Brownlee*, 186 Ill. 2d at 519. Here, an eight-minute stop with a quick determination as to the person's involvement in the crime comports with the permissible scope of an investigation after a *Terry* stop. See *Young*, 306 Ill. App. 3d at 354 (limited to obtaining an immediate identification of defendant by the victim).

Furthermore, the transportation of a suspect for the purpose of an identification is not necessarily an unreasonable seizure under the fourth amendment. *People v. Lippert*, 89 Ill. 2d 171, 181-82 (1982). An unreasonable seizure may be found where the person is transported to "a more institutional setting, such as a police station or interrogation room." *United States v. Vanichromanee*, 742 F.2d 340, 345 (7th Cir. 1984). However, "the transportation of a suspect for purposes of a showup when the officer is conducting a field investigation immediately after the commission of a crime and when the victim, a short distance away, could confirm or deny the identification of the suspect may not be an unreasonable seizure under the fourth amendment." *People v. Follins*, 196 Ill. App. 3d 680, 693 (1990) (discussing *Lippert*). In *Follins*, this court held that the transporting of the defendant a few blocks to the scene of the crime for a showup was permissible because it was minimally intrusive when compared to the benefit of the immediate investigation. Like *Follins*, the site of transfer in the present case was to the crime scene for an immediate identification to either inculpate or exculpate the suspect. The crime scene was only one block from the site of the *Terry* stop. Furthermore, the police officers' decision to transport defendant one block to the victim's house was reasonable considering the very short distance involved and the trauma the elderly victim had endured.

The restraint of defendant in this case also did not transform the investigatory stop into an arrest. The trial court mistakenly found that defendant was under arrest at the time of the stop because "[h]e

was not free to go." Contrary to this finding, the law provides that, during the course of a legitimate investigative stop, a person " 'is no more free to leave than if he were placed under a full arrest.' " *People v. Paskins*, 154 Ill. App. 3d 417, 422 (1987), quoting *People v. Roberts*, 96 Ill. App. 3d 930, 933 (1981). The rationale for allowing such restraint during an investigatory stop recognizes the paradox that would occur if the police had the authority to detain a person pursuant to a stop yet were denied the use of force that might be necessary to effectuate the detention. *Walters*, 256 Ill. App. 3d at 237, citing *Starks*, 190 Ill. App. 3d at 509. Accordingly, the status or nature of an investigatory stop is not affected by either the drawing of a gun by the police officer (*People v. Moore*, 294 Ill. App. 3d 410, 415 (1998)) or by the use of handcuffs (*People v. Waddell*, 190 Ill. App. 3d 914, 926-27 (1989); *United States v. Smith*, 3 F.3d 1088, 1094 (7th Cir. 1993)) or by placing the person in a squad car (see *Walters*, 256 Ill. App. 3d at 238). In the present case, Sergeant Murray was alone when he stopped defendant. Murray knew that the offender he was seeking had committed a home invasion, choking and robbing the victim. Although he was not sure whether defendant was armed, Murray was aware that the intruder had behaved violently. There was testimony that the victim said his assailant was 6 feet 2 inches tall and weighed 220 pounds. A reasonably prudent man in these circumstances would be warranted in the belief that his safety or that of others was in danger, and we will not second-guess Sergeant Murray's decisions. See *Tilmon*, 19 F.3d at 1227; see also *People v. Smith*, 208 Ill. App. 3d 44, 50 (1991).

In fact, the instant defendant, in his appellate brief, correctly acknowledges "that in isolation or even in combination, for the police to draw a gun at a citizen, handcuff him, place him in a squad car and drive him to a confrontational encounter with a witness in a different location might not *per se* cause a stop to become an arrest under the particular facts of an individual case." See *Tilmon*, 19 F.3d at 1224 (permitting drawing of weapons, use of handcuffs, and placing suspects in squad car); *Bujdud*, 177 Ill. App. 3d at 402 (presence of these circumstances does not automatically convert a stop into an arrest). Regardless of the initial restraint of the person's movement, whether a stop becomes an arrest is determined by the length of time the person is detained and the scope of the investigation that follows the initial stop. *E.g.*, *Walters*, 256 Ill. App. 3d at 237.

Under the facts and circumstances of the present case, we find that the investigatory stop was properly based upon reasonable suspicion and the defendant was properly arrested only after the victim's positive identification, which gave rise to probable cause. See *Young*, 306 Ill. App. 3d at 355-56.

Accordingly, the order of the trial court is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

McNULTY, P.J., and GORDON, J., concur.