Docket No. 108459.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. MARC A. CLOSE, Appellant.

*Opinion filed October 21, 2010.*

CHIEF JUSTICE FITZGERALD delivered the judgment of the court, with opinion.

Justices Freeman, Thomas, Kilbride, Garman, and Karmeier concurred in the judgment and opinion.

Justice Burke dissented, with opinion.

## OPINION

Defendant, Marc A. Close, was charged by indictment with one count of felony driving while license revoked (625 ILCS 5/6–303(d) (West 2006)). The circuit court of La Salle County granted defendant's motion to quash arrest and suppress evidence, finding the stop of defendant's vehicle was unlawful because the officer had no reasonable, articulable suspicion that defendant was driving outside the terms of his restricted driving permit (RDP). The appellate court reversed and remanded for further proceedings. 389 Ill. App. 3d 228.

For the reasons stated below, we affirm the judgment of the appellate court.

BACKGROUND

On August 7, 2007, defendant was indicted by a La Salle County grand jury on one count of felony driving while license revoked. The indictment alleged that on June 24, 2007, defendant knowingly drove a 1987 Chevrolet vehicle upon a public highway in LaSalle, Illinois, at a time when his license was revoked, and that the basis for the revocation was a conviction for driving under the influence of alcohol. The indictment also alleged that defendant previously had been convicted of the offense of driving while license revoked, and that the basis for that revocation was also a conviction for driving while under the influence of alcohol. See 625 ILCS 5/11–501 (West 2006).

Defendant filed a motion to quash his arrest and suppress evidence. At the hearing, Officer Thomas Belski of the LaSalle police department testified that on Sunday, June 24, 2007, at 7:13 p.m. he was on routine patrol. He ran a registration check of a 1987 Chevrolet pickup on his mobile computer, which disclosed that the license of the registered owner, defendant, had been revoked. The computer also disclosed that the owner had been issued an RDP, but did not disclose the terms of the RDP. Belski testified that the person driving the pickup truck strongly resembled the photograph of the owner that he was able to pull up on his computer. Belski stopped the vehicle, asked defendant if he was aware his license was revoked, and subsequently arrested defendant for driving while license revoked. Prior to the stop, Belski did not observe defendant commit any traffic violation.

Defense counsel asked Belski, "The reason that you stopped the vehicle [was] because you had a hunch that he [defendant] was not driving within the periods of his restricted driving permit, isn't that correct?" Belski answered, "Yes, I did." Belski later explained that based on his experience, an RDP is typically issued for work or hardship, and prior to stopping defendant, he took into account the day of the week–Sunday; the time of day–7:13 p.m.; and defendant's clothing–a tank top, baseball cap, and sunglasses.

Relying on *People v. Johnson*, 379 Ill. App. 3d 710 (2008), defendant argued that Officer Belski's hunch that defendant was driving outside the parameters of his RDP did not provide an adequate basis for the vehicle stop. The trial court agreed and granted defendant's motion to suppress. The State subsequently filed a certificate of substantial impairment and notice of appeal. See 210 Ill.

2d R. 604(a)(1); *People v. Young*, 82 Ill. 2d 234, 247 (1980).

The appellate court reversed and remanded for further proceedings. 389 Ill. App. 3d at 234. The majority expressly declined to follow *Johnson* and held that "the mere existence of an RDP does not extinguish an officer's reasonable and articulable basis to believe the officer has witnessed a revoked driver traveling on a highway of this state, in violation of the provisions of the Vehicle Code." 389 Ill. App. 3d at 233. The appellate court reasoned that the language of section 6–303 of the Illinois Vehicle Code, which establishes the offense of driving while license revoked, demonstrates that the issuance of an RDP is a statutory defense and not an additional element that the State is required to prove. 389 Ill. App. 3d at 232-33. Accordingly, "an officer is not required to determine or verify the scope of the restricted driving permit *before* performing a traffic stop when a reasonable articulable basis exists to believe the license of the person behind the wheel is revoked." (Emphasis in original.) 389 Ill. App. 3d at 233.[1] The dissenting justice would have followed *Johnson*, stating that "in order to effectuate a valid traffic stop, *** an officer must have a reasonable articulable suspicion that the driver is operating the vehicle outside the terms of his/her RDP." 389 Ill. App. 3d at 237 (McDade, J., dissenting).

We allowed defendant's petition for leave to appeal. 210 Ill. 2d R. 315.

---

[1]Though the appellate court majority quoted a version of section 6–303 that appeared in the 2007 supplement to West's 2006 Illinois Compiled Statutes (625 ILCS 5/6–303 (West Supp. 2007)), the statutory amendments reflected in the 2007 supplement were not effective at the time of the vehicle stop at issue here. Rather, the version of section 6–303 of the Illinois Vehicle Code set forth in West's 2006 Illinois Compiled Statutes (625 ILCS 5/6–303 (West 2006)) applies to the present case and it is that section which will be cited in this opinion. We note, however, that the language in the version quoted by the appellate court majority and the language in the applicable version do not differ in any way material to the present litigation.

## ANALYSIS
### Scope of Review

Before considering the propriety of the suppression order, we address an argument defendant raised in his reply brief concerning the scope of our review. As noted above, underlying the appellate court's opinion was its analysis of section 6–303 of the Illinois Vehicle Code (625 ILCS 5/6–303 (West 2006)). Defendant contends that the parties never raised a statutory construction issue involving section 6–303 and that the appellate court erred by raising this issue *sua sponte*. See *People v. Hunt*, 234 Ill. 2d 49, 56 (2009) (appellate court's *sua sponte* consideration of issues not considered by the trial court and never argued by the parties constituted error). Defendant further argues that because the theory under which a case is tried cannot be changed on review (*Hunt*, 234 Ill. 2d at 56), the State cannot raise before this court an issue improperly considered by the appellate court. For these reasons, defendant contends that we should not consider the meaning of section 6–303. We disagree.

In the trial court, the State argued, *inter alia*, that the vehicle stop was lawful, despite the existence of the RDP. On appeal, the State developed this argument, maintaining that the statutory scheme governing the issuance of RDPs places the burden on the revoked driver to produce the RDP issued to him, but does not dissipate the officer's reasonable articulable suspicion that the license of the driver has been revoked. The appellate court agreed with the State when it concluded that "the mere existence of an RDP does not extinguish an officer's reasonable and articulable basis to believe the officer has witnessed a revoked driver traveling on a highway of this state." 389 Ill. App. 3d at 233. Though the appellate court relied on section 6–303, a section of the Illinois Vehicle Code to which the State did not expressly refer in its appellate brief, section 6–303 is part and parcel of the RDP statutory scheme on which the State generally relied. Moreover, section 6–303 defines the offense at the heart of this case–driving while license revoked–and any holding in this case must be consistent with the statute. Thus, the appellate court did not err in considering this section of the Illinois Vehicle Code and the statutory construction issue, which the parties have fully briefed, is properly before us.

Motion to Suppress

When reviewing a trial court's ruling on a motion to suppress, we will accord great deference to the trial court's factual findings and will reverse those findings only if they are against the manifest weight of the evidence; but we will review *de novo* the court's ultimate decision to grant or deny the motion. *People v. Richardson*, 234 Ill. 2d 233, 251 (2009); *People v. Sutherland*, 223 Ill. 2d 187, 196-97 (2006). Defendant here does not challenge Officer Belski's testimony regarding the circumstances leading up to the vehicle stop. Where no dispute exists as to the underlying facts, our task is to determine the legal effect of those facts, *i.e.*, whether the trial court's ultimate ruling that suppression was warranted was correct. Accordingly, our review proceeds *de novo*. *People v. Bunch*, 207 Ill. 2d 7, 13 (2003). To the extent disposition of this case turns on our review of the appellate court's construction of section 6–303 of the Illinois Vehicle Code (625 ILCS 5/6–303 (West 2006)), review of that issue also proceeds *de novo*. *People v. Jones*, 214 Ill. 2d 187, 193 (2005).

The law is settled that a vehicle stop constitutes a "seizure" of "persons" within the meaning of the fourth amendment. *Brendlin v. California*, 551 U.S. 249, 255, 168 L. Ed. 2d 132, 138-39, 127 S. Ct. 2400, 2406 (2007); *Bunch*, 207 Ill. 2d at 13. Accordingly, vehicle stops are subject to the fourth amendment's reasonableness requirement (*Whren v. United States*, 517 U.S. 806, 810, 135 L. Ed. 2d 89, 95, 116 S. Ct. 1769, 1772 (1996)), which we analyze under the principles set forth in *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968) (*People v. Cosby*, 231 Ill. 2d 262, 274 (2008); *People v. Moss*, 217 Ill. 2d 511, 526 (2005)). Under *Terry*, a police officer may conduct a brief, investigatory stop of a person where the officer reasonably believes that the person has committed, or is about to, commit a crime. *Terry*, 392 U.S. at 22, 20 L. Ed. 2d at 906-07, 88 S. Ct. at 1880; *People v. Gherna*, 203 Ill. 2d 165, 177 (2003); *People v. Thomas*, 198 Ill. 2d 103, 109 (2001).

The investigatory stop must be justified at its inception. *Terry*, 392 U.S. at 19-20, 20 L. Ed. 2d at 905, 88 S. Ct. at 1879. "[T]he police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880. The officer's suspicion must amount to more than an

inarticulate hunch (*Terry*, 392 U.S. at 22, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880; *Gherna*, 203 Ill. 2d at 177), but need not rise to the level of suspicion required for probable cause (*United States v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10, 109 S. Ct. 1581, 1585 (1989)). In judging the police officer's conduct, we apply an objective standard: "would the facts available to the officer at the moment of the seizure *** 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Terry*, 392 U.S. at 21-22, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880; accord *Thomas*, 198 Ill. 2d at 109.

The *Terry* standards have been codified in the Code of Criminal Procedure of 1963 (725 ILCS 5/107–14 (West 2006)), and we apply the same standards in determining the propriety of investigatory stops under article I, section 6, of our state constitution (Ill. Const. 1970, art. I, §6). *Thomas*, 198 Ill. 2d at 109; see also *People v. Caballes*, 221 Ill. 2d 282, 313-14 (2006) (reaffirming court's position that the search and seizure clause of our state constitution should be interpreted in limited lockstep with the search and seizure clause of the federal constitution).

Defendant does not dispute that where a police officer has a reasonable, articulable basis to believe that a driver is unlicensed, the officer may lawfully conduct a vehicle stop. *Delaware v. Prouse*, 440 U.S. 648, 663, 59 L. Ed. 2d 660, 673, 99 S. Ct. 1391, 1401 (1979). Defendant argues, however, that where, as here, the officer is aware that the driver has been issued an RDP, the officer must have a reasonable, articulable suspicion that the driver is driving outside the terms of his or her RDP in order to effect a lawful vehicle stop under *Terry*. Relying on the *Johnson* opinion, defendant maintains that "[w]hile Officer Belski may have guessed that Sunday afternoons are times when many RDPs prohibit driving, that hunch alone is not enough to give rise to reasonable suspicion."

In *Johnson*, the appellate court held, under facts virtually identical to the present case, that the police officer lacked a reasonable, articulable suspicion to stop the defendant's vehicle on a Sunday afternoon based on the officer's suspicion that the RDP did not permit the defendant to drive on Sundays. Though recognizing that the officer was likely correct in believing that Sunday afternoons are times when many RDPs prohibit driving, the *Johnson* court determined "that insight was not enough to give rise to reasonable suspicion." *Johnson*,

379 Ill. App. 3d at 712. The appellate court observed that while the limited purposes for which an RDP may be issued make it "less likely" that a person with an RDP will be driving within its terms on a Sunday afternoon, they do not make it "improbable." *Johnson*, 379 Ill. App. 3d at 713. Thus, the *Johnson* court affirmed the trial court's order quashing the defendant's arrest and suppressing the evidence. *Johnson*, 379 Ill. App. 3d at 716.

The State responds that *Johnson* was wrongly decided. Echoing the view of the appellate majority here, the State maintains that if, under section 6–303 of the Illinois Vehicle Code (625 ILCS 5/6–303 (West 2006)), the State is not required to prove that a defendant was driving outside the terms of his or her RDP in order to prove the offense of driving while license revoked, *a fortiori*, the officer need not suspect that the person was driving outside the terms of his or her RDP in order to effect a lawful vehicle stop where the officer has a reasonable articulable suspicion that the driver's license has been revoked. We agree with the State and overrule *Johnson*.

Section 6–303 of the Illinois Vehicle Code defines the offense of driving while license revoked:

> "(a) Any person who drives or is in actual physical control of a motor vehicle on any highway of this State at a time when such person's driver's license, permit or privilege to do so or the privilege to obtain a driver's license or permit is revoked or suspended as provided by this Code or the law of another state, except as may be specifically allowed by a judicial driving permit, family financial responsibility driving permit, probationary license to drive, or a restricted driving permit issued pursuant to this Code or under the law of another state, shall be guilty of a Class A misdemeanor." 625 ILCS 5/6–303 (West 2006).[2]

In *People v. Turner*, 64 Ill. 2d 183, 185 (1976), this court held that under section 6–303, the elements of the offense are "(1) the act

---

[2]Although driving while license revoked is generally a Class A misdemeanor, the presence of other circumstances, including prior violations (as is the case here), could result in a felony conviction. See 625 ILCS 5/6–303(d), (d–2), (d–3), (d–4), (d–5) (West 2006).

of driving a motor vehicle on the highways of this State, and (2) the fact of the revocation of the driver's license or privilege." Though *Turner* involved a much earlier version of section 6–303, that version, like the one applicable here, contained an RDP exception. See Ill. Rev. Stat. 1973, ch. 95½ , par. 6–303 ("[a]ny person who drives a motor vehicle on any highway of this State at a time when his drivers license *** is revoked ***, except as may be allowed by a restricted driving permit ***, shall be guilty of a Class A misdemeanor"). *Turner* did not, however, expressly determine whether the RDP exception constitutes an additional element of the offense of driving while license revoked, or is a matter of defense. The rule applicable to such determinations is well established:

> "[I]t is the rule in this State that where an act is made criminal, with exceptions embraced in the enacting clause creating the offense, so as to be descriptive of it, the People must allege and prove that the defendant is not within the exceptions so as to show that the precise crime has been committed. In other words, where the exception is descriptive of the offense it must be negatived in order to charge the defendant with the offense. On the other hand, if the exception, instead of being a part of the description of the offense, merely withdraws certain acts or certain persons from the operation of the statute it need not be negatived, and its position in the act, whether in the same section or another part of the act, is of no consequence. (*People v. Saltis*, 328 Ill. 494; *People v. Callicott*, 322 *id.* 390; *People v. Talbot*, 322 *id.* 416; *People v. Butler*, 268 *id.* 635; *Sokel v. People*, 212 *id.* 238.) Exceptions are generally mere matters of defense. (*Sokel v. People, supra*; *Beasley v. People*, 89 Ill. 571; *Lequat v. People*, 11 *id.* 330.)" *People ex rel. Courtney v. Prystalski*, 358 Ill. 198, 203-04 (1934).

Accord *People v. Green*, 362 Ill. 171, 175-76 (1935); *People v. Handzik*, 410 Ill. 295, 306 (1951); *People v. Laubscher*, 183 Ill. 2d 330, 335 (1998).

Applying this rule, our appellate court in *People v. Ellis*, 71 Ill. App. 3d 719, 720-21 (1979), held that the exception in section 6–303 "merely withdraws persons with restricted driving permits from the operation of the statute and in no sense is descriptive of the offense."

In 2001, the appellate court revisited *Ellis*, and again held that the exceptions in section 6–303, including the RDP exception, are not part of the substantive offense of driving while license revoked, and rejected the defendant's argument that the State must prove that the defendant did not have an RDP issued by another state. *People v. Rodgers*, 322 Ill. App. 3d 199, 201-03 (2001). The *Rodgers* court reasoned:

> "[I]f a defendant merely drives on a public highway while his license is revoked, he commits what is generally a criminal act. That is, in the typical case, the commission of the crime does not depend on the inapplicability of the exceptions. Thus, the exceptions do not bear on the elements of the offense; instead, they state only that *particular defendants* (those with, *e.g.*, restricted driving permits) are protected from liability. Because the exceptions merely withdraw certain persons from the scope of the statute, the State has no burden to disprove them." (Emphasis in original.) *Rodgers*, 322 Ill. App. 3d at 203.

We agree with *Ellis* and *Rodgers* that the RDP exception in section 6–303 is not an element of the offense of driving while license revoked. Thus, we reaffirm our holding in *Turner* that the elements of the offense are "(1) the act of driving a motor vehicle on the highways of this State, and (2) the fact of the revocation of the driver's license or privilege." *Turner*, 64 Ill. 2d at 185.

Defendant conceded at oral argument that the RDP exception is not an element of the offense, but contends that the elements of the offense are only relevant at trial and do not bear on whether the vehicle stop was lawful under *Terry* principles. We disagree. If, under *Terry*, we must consider whether, based on the facts available to him, Officer Belski had a reasonable, articulable suspicion that defendant committed or was about to commit a crime, then the conduct that constitutes the crime is relevant. Accordingly, to effect a lawful *Terry* stop of defendant on suspicion of driving while license revoked, Officer Belski was required to have a reasonable articulable suspicion that defendant was "driving a motor vehicle on the highways of this State" and that defendant's license was revoked. *Turner*, 64 Ill. 2d at 185. Officer Belski was not required to have a reasonable articulable suspicion that defendant was not in compliance with the terms of his

RDP, as that is not an element of the offense. We do not imply, however, that a police officer cannot effect a lawful *Terry* stop without first identifying a particular crime or considering whether the circumstances he or she observed would satisfy each element of a particular offense. *Terry* does not require that level of specificity or suspicion.

An officer, of course, may not ignore facts which would dispel suspicion of criminal wrongdoing. To illustrate, "if the officer knows that the owner of a vehicle has a revoked license and further, that the owner is a 22-year-old male, and the officer observes that the person driving the vehicle is a 50- or 60-year-old woman, any reasonable suspicion of criminal activity evaporates." *Minnesota v. Pike*, 551 N.W.2d 919, 922 (Minn. 1996). Accord *Armfield v. State*, 918 N.E.2d 316, 321 n.7 (Ind. 2009); *People v. Jones*, 260 Mich. App. 424, 430 n.4, 678 N.W.2d 627, 631 n.4 (2004). To further illustrate, if the officer is aware that the terms of the driver's RDP allow him to drive at the time and place in question, then no basis exists for executing a *Terry* stop, in the absence of any traffic violation or suspicion of other criminal wrongdoing.

Defendant directs our attention to section 6–205 of the Illinois Vehicle Code, which sets forth the purposes for which an RDP may be issued. Section 6–205 provides:

> "[T]he court may recommend and the Secretary of State in his discretion *** may *** issue *** a restricted driving permit granting the privilege of driving a motor vehicle between the petitioner's residence and petitioner's place of employment or within the scope of the petitioner's employment related duties, or to allow transportation for the petitioner or a household member of the petitioner's family for the receipt of necessary medical care or, if the professional evaluation indicates, provide transportation for the petitioner for alcohol remedial or rehabilitation activity, or for the petitioner to attend classes, as a student, in an accredited educational institution ***." 625 ILCS 5/6–205(c) (West 2006).

Defendant maintains that in light of these established purposes for the issuance of an RDP, unless Officer Belski was aware of the terms of the RDP at the time of the vehicle stop, the officer "could not know

whether or not the defendant was committing a crime." *Terry*, however, does not require that the officer "know" that the driver is committing a crime. As the Supreme Court explained:

> "The Fourth Amendment requires 'some minimal level of objective justification' for making the stop. [Citation.] That level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. We have held that probable cause means 'a fair probability that contraband or evidence of a crime will be found,' [citation] and the level of suspicion required for a Terry stop is obviously less demanding than that for probable cause [citation]." *United States v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10, 109 S. Ct. 1581, 1585 (1989).

See also *Alabama v. White*, 496 U.S. 325, 330, 110 L. Ed. 2d 301, 309, 110 S. Ct. 2412, 2416 (1990) (recognizing that reasonable suspicion is a less demanding standard than probable cause with respect to the quantity, content and reliability of the underlying information).

Moreover, the mere possibility that the RDP issued to defendant allowed him to drive at the time and place that Officer Belski observed him does not negate the officer's reasonable suspicion that defendant was driving on a revoked license. Police officers are " 'not required to rule out all possibility of innocent behavior' " before initiating a *Terry* stop. 4 W. LaFave, Search & Seizure §9.5(b), at 481 (4th ed. 2004), quoting *United States v. Holland*, 510 F.2d 453, 455 (9th Cir. 1975). As our own appellate court has aptly observed: "The purpose of a *Terry* stop is to allow a police officer to investigate the circumstances that provoke suspicion and either confirm or dispel his suspicions." *People v. Ross*, 317 Ill. App. 3d 26, 31 (2000). See also *Florida v. Royer*, 460 U.S. 491, 500, 75 L. Ed. 2d 229, 238, 103 S. Ct. 1319, 1325-26 (1983) (plurality op.) ("investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time"); accord *United States v. Sharpe*, 470 U.S. 675, 686, 84 L. Ed. 2d 605, 615-16, 105 S. Ct. 1568, 1575 (1985).

Here, Officer Belski was aware that the license of the registered owner of the vehicle had been revoked and the person driving the vehicle strongly resembled the photograph of the owner. Viewed

objectively, the facts available to Officer Belski were sufficient to create the reasonable, articulable suspicion necessary to effect a *Terry* stop. Although Officer Belski was also aware that defendant had been issued an RDP, that fact alone would not cause reasonable suspicion to evaporate, and Officer Belski could conduct a brief investigatory stop to verify or dispel his suspicion that defendant was driving on a revoked license. Accordingly, we affirm the judgment of the appellate court reversing the trial court's order granting defendant's motion to quash arrest and suppress evidence and remanding for further proceedings.

*Affirmed.*

JUSTICE BURKE, dissenting:

I would find that the totality of the circumstances in this case did not amount to reasonable suspicion sufficient to support the stop. In contrast to the majority, I would find that the officer's knowledge of the defendant's restricted driving permit (RDP) is a relevant fact which must be taken into account in analyzing the reasonableness of the stop under *Terry*. Therefore, I respectfully dissent from the majority opinion.

The facts in this case are not in dispute. Officer Thomas Belski was on routine patrol in an unmarked squad car in a residential area of LaSalle, Illinois. He ran a registration check on defendant's license plate on his mobile computer. The computer showed that the registered owner had a revoked driver's license and an RDP but did not show the details of the RDP. After confirming that the photograph matched the driver, Officer Belski stopped the defendant and arrested him for driving while license revoked. As he testified later, prior to the stop, Officer Belski had a hunch that the defendant was driving outside the scope of his RDP based on the fact that it was a Sunday at 7:13 p.m., the defendant was wearing a tank top, baseball cap, and sunglasses, and, in Officer Belski's experience, RDP's are issued only for "work or hardships."

The majority holds that the facts were sufficient to support a *Terry* stop because the facts known to the officer–that the registered owner

had a revoked driver's license and that the person driving the vehicle strongly resembled the photograph of the owner–satisfied the elements of the offense of driving while license revoked. Slip op. at 7-8, 11-12. With regard to the RDP, the majority holds that "Officer Belski was not required to have a reasonable articulable suspicion that defendant was not in compliance with the terms of his RDP, as that is not an element of the offense." Slip op. at 9-10. This is so, explains the majority, because an RDP is an exception to the offense which the State does not have to prove at trial. Slip op. at 9.

I disagree with the majority's analysis because it abandons and does not even mention the "totality of the circumstances" test which this court has consistently applied to review the propriety of *Terry* stops. The majority's unwarranted application of a new "elements of the offense" test essentially permits spot-checks of every driver who has been issued an RDP, without regard to any surrounding circumstances.

The determination of whether a seizure or stop is reasonable involves a dual inquiry: "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 19-20, 20 L. Ed. 2d 889, 905, 88 S. Ct. 1868, 1879 (1968). Under the first prong, "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10, 109 S. Ct. 1581, 1585 (1989), citing *Terry*, 392 U.S. at 30, 20 L. Ed. 2d at 911, 88 S. Ct. at 1884-85. "Courts have used a variety of terms to capture the elusive concept of what cause is sufficient to authorize police to stop a person. *** But the essence of all that has been written is that the totality of the circumstances–the whole picture–must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-18, 66 L. Ed. 2d 621, 629, 101 S. Ct. 690, 695 (1981). See also *United States v. Lawshea*, 461 F.3d 857, 859 (7th Cir. 2006) (in evaluating the reasonableness of a *Terry* stop, we examine "the totality of the circumstances known to

-13-

the officer at the time of the stop"); *United States v. Jackson*, 300 F.3d 740, 745-46 (7th Cir. 2002) (the "totality of the circumstances" include the experience of the officer, the behavior and characteristics of a suspect, whether the location of the stop is a "high crime" area, and an officer's prior dealings with the individual or knowledge of a criminal record).

Until today's majority decision, this court has consistently applied the "totality of the circumstances" test to fourth amendment challenges of stops and seizures. See *People v. Moss*, 217 Ill. 2d 511, 529-30 (2005) (we judge the reasonableness of the search by its particular facts and circumstances, using the "totality of the circumstances" analysis); *People v. Lee*, 214 Ill. 2d 476, 488 (2005) ("the totality of the circumstances, including the citizen complaint, were certainly enough to heighten the officers' suspicion and warrant further investigation"); *People v. Thomas*, 198 Ill. 2d 103, 110 (2001) ("[v]iewed as a whole, the situation confronting the police officer must be so far from the ordinary that any competent officer would be expected to act quickly"); *People v. McGowan*, 69 Ill. 2d 73, 78 (1977) (applying the same test).

In looking at the totality of the circumstances, we must include in our analysis *all* of the facts known to the officer prior to the stop. It is clear from the Supreme Court's discussion of the facts in *Terry* that all surrounding circumstances are relevant, including facts which dispel an officer's reasonable suspicion that the defendant is engaged in criminal activity. In *Terry*, the police officer observed the defendant repeatedly pacing in front of a store, peering into the store window, and conferring with two other men. In the officer's experience, the defendant's actions were consistent with "casing a job." The Court held that the subsequent stop and search of the defendant were reasonable under the fourth amendment:

> "We think on the facts and circumstances Officer McFadden detailed before the trial judge a reasonably prudent man would have been warranted in believing petitioner was armed and thus presented a threat to the officer's safety while he was investigating his suspicious behavior. The actions of Terry and Chilton were consistent with McFadden's hypothesis that these men were contemplating a daylight robbery–which, it is reasonable to assume, would be likely to involve the use of

weapons–and *nothing in their conduct from the time he first noticed them until the time he confronted them and identified himself as a police officer gave him sufficient reason to negate that hypothesis.* Although the trio had departed the original scene, there was nothing to indicate abandonment of an intent to commit a robbery at some point. Thus, when Officer McFadden approached the three men gathered before the display window at Zucker's store he had observed enough to make it quite reasonable to fear that they were armed; and *nothing in their response to his hailing them, identifying himself as a police officer, and asking their names served to dispel that reasonable belief.*" (Emphases added.) *Terry*, 392 U.S. at 28, 20 L. Ed. 2d at 910, 88 S. Ct. at 1883.

In the case at bar, the majority acknowledges that "[a]n officer, of course, may not ignore facts which would dispel suspicion of criminal wrongdoing." Slip op. at 10. The majority offers the following illustration of this principle: "if the officer is aware that the terms of the driver's RDP allow him to drive at the time and place in question, then no basis exists for executing a *Terry* stop, in the absence of any traffic violation or suspicion of other criminal wrongdoing." Slip op. at 10. The majority then states that "the mere possibility that the RDP issued to defendant allowed him to drive at the time and place that Officer Belski observed him *does not negate the officer's reasonable suspicion* that defendant was driving on a revoked license," and that "[a]lthough Officer Belski was also aware that defendant had been issued an RDP, that fact alone *would not cause reasonable suspicion to evaporate.*" (Emphases added.) Slip op. at 11, 12. The majority fails to recognize, however, that the officer's knowledge of the defendant's RDP *is* a fact which dispels suspicion of criminal wrongdoing. Thus, it is relevant to whether the officer had reasonable suspicion that the driver was engaged in criminal activity.

"Under *Terry*, a police officer may briefly stop a person for temporary questioning if the officer has knowledge of sufficient articulable facts at the time of the encounter to create a reasonable suspicion that the person in question has committed or is about to commit a crime." *People v. Lee*, 214 Ill. 2d 476, 487 (2005). If the defendant was driving within the terms of his RDP, he was *not committing a crime.* Thus, the officer's knowledge of the defendant's

RDP, without knowing the terms of the permit, reduced the likelihood that defendant was committing a crime. I agree with the dissenting justice in the appellate court that "[d]riving on a revoked license *is not a crime* if the individual is driving within the scope of his/her RDP. Thus, in order to effectuate a valid traffic stop, I believe an officer must have a reasonable articulable suspicion that the driver is operating the vehicle outside the terms of his/her RDP." (Emphasis added.) 389 Ill. App. 3d at 237 (McDade, J., dissenting).

The majority considers only two facts in concluding that the facts were sufficient to create the reasonable, articulable suspicion necessary to effect a *Terry* stop: (1) that the license of the registered owner of the vehicle had been revoked; and (2) that the person driving the vehicle strongly resembled the photograph of the owner. Under the "totality of the circumstances" test, however, all of the surrounding facts must be included in the analysis. In addition to the two facts above, Officer Belski knew that: (3) the registered owner of the vehicle had an RDP; (4) the driver was driving the vehicle on a Sunday at 7:13 p.m.; and (5) the driver was wearing sunglasses, a baseball cap, and a tank top.

Taking into account the additional facts not considered by the majority, I would hold that the facts do not support a finding of reasonable suspicion in the case at bar. The facts known to the officer in this case did not amount to more than a mere "hunch" that the defendant was committing a crime. The fourth amendment requires that the police officer articulate something more than an "inchoate and unparticularized suspicion or 'hunch.' " *Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883. "[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880. "The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common sense conclusions about human behavior; jurors as factfinders are permitted to do the same–and so are law enforcement officers." *Cortez*, 449 U.S. at 418, 66 L. Ed. 2d at 629, 101 S. Ct. at 695.

I agree with the appellate court in *Johnson*, which held under

similar facts that the limited allowable purposes for an RDP "make it less likely that a person with an RDP will be driving within the scope of an RDP on a Sunday afternoon, but they do not make it improbable." *People v. Johnson*, 379 Ill. App. 3d 710, 713 (2008). The facts in the present case do not support the particularized suspicion required for a stop. See *Johnson*, 379 Ill. App. 3d at 713-14. It is entirely possible that the defendant was driving to or from work on a Sunday at the time his vehicle was stopped. At the suppression hearing, Officer Belski admitted that he had no way of knowing before he stopped defendant whether defendant was working or whether he had other clothes in his car. While I would not *require* that the officer know the exact terms of the RDP before stopping a driver, I believe there must be more specific facts than are present in this case to support the stop.

Accordingly, I would reverse the judgment of the appellate court and affirm the trial court's order granting defendant's motion to quash arrest and suppress evidence.