2015 IL App (2d) 131267
Nos. 2-13-1267 & 2-13-1268
Opinion filed April 30, 2015

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE *ex rel.* Michael Nerheim, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 13-MR-667 |
| | ) | |
| 2005 BLACK CHEVROLET CORVETTE, | ) | |
| VIN: 1G1YY34U155125203, | ) | |
| | ) | |
| | ) | |
| Defendant | ) | Honorable |
| | ) | Robert K. Beaderstadt, |
| (Robert P. Ritacca, Defendant-Appellant). | ) | Judge, Presiding. |

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE | ) | Appeal from the Circuit Court |
| OF ILLINOIS, | ) | of Lake County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 13-TR-28186 |
| | ) | |
| ROBERT P. RITACCA, | ) | Honorable |
| | ) | Robert K. Beaderstadt, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SPENCE delivered the judgment of the court, with opinion.
Justices McLaren and Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Robert P. Ritacca, appeals the forfeiture of his 2005 Corvette and his

conviction of driving without a device (625 ILCS 5/6-206.2(a) (West 2012)).    On appeal,

defendant argues that: (1) the forfeiture of his vehicle was not statutorily authorized and was against the manifest weight of the evidence; (2) the police officer's traffic stop violated the fourth amendment; and (3) the forfeiture of his vehicle was grossly disproportionate to the offense. We affirm.

¶ 2                                I. BACKGROUND

¶ 3     On April 9, 2013, the State filed a complaint for seizure and forfeiture of defendant's 2005 Corvette, under section 36-1 of the Criminal Code of 2012 (Code) (720 ILCS 5/36-1 (West 2012)). The complaint alleged that the vehicle was used in defendant's commission of the offense of driving while his license was suspended or revoked under section 6-303 of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/6-303 (West 2012)). Defendant's license was suspended pursuant to section 11-501.1 of the Vehicle Code (625 ILCS 5/11-501.1 (West 2012)) (the refusal to submit to a chemical test or tests of blood, breath, or urine will result in the summary suspension of the person's privilege to operate a vehicle).

¶ 4     Defendant moved to quash his arrest and suppress evidence in both the forfeiture case (appeal No. 2-13-1267) and the underlying criminal case (appeal No. 2-13-1268). A hearing occurred in August 2013, during which the following evidence was adduced.

¶ 5     On March 17, 2013, defendant was driving his vehicle to a gas station around 11:15 a.m. Officer Richard Vorpagel, who was on patrol, ran a check of defendant's license plate while sitting at an intersection, which was standard procedure. The check revealed defendant's identity and the status of his driver's license. Officer Vorpagel learned that defendant's license had been suspended pursuant to section 11-501.1 of the Vehicle Code, a monitoring-device driving permit (permit) had been issued, and installation of a breath-alcohol ignition-interlock device (device) was required.

¶ 6    Officer Vorpagel followed defendant to the gas station and conducted a traffic stop. The purpose of the stop was to verify defendant's identity and compliance with the permit; Officer Vorpagel admitted that defendant had committed no moving violations. Officer Vorpagel was not aware of the limitations of the permit until defendant produced it during the stop. The permit was issued on January 28, 2013, and defendant had 14 days from that date to have a device installed. Because a device had not been installed, Officer Vorpagel determined that defendant was driving "outside" the permit. Defendant admitted not having a device when he was stopped on March 17, 2013. Defendant told Officer Vorpagel that the device had not been installed because the vehicle had been in storage.

¶ 7    Officer Vorpagel consulted his sergeant and charged defendant with felony driving while his license was suspended, and defendant's vehicle was seized. Later, at the police station, Officer Vorpagel was instructed to cite defendant for misdemeanor driving while his license was suspended.

¶ 8    Based on this evidence, the trial court denied defendant's motion to quash his arrest and suppress evidence. According to the court, Officer Vorpagel's initial stop was valid, because it was well established that an officer could lawfully conduct a stop of a vehicle after learning that the registered owner's license was suspended or revoked. The purpose of such a stop was to determine whether the driver was allowed to drive. The court determined that, after the initial valid stop, Officer Vorpagel had reasonable, articulable suspicion to further inquire into whether defendant was complying with the permit. After reviewing the permit, Officer Vorpagel observed that no device had been installed, and probable cause existed to arrest defendant for driving on a suspended license. The court noted that defendant could have been charged with a Class 4 felony but that the State had declined to do so.

¶ 9　At defendant's forfeiture hearing later that day, the parties stipulated to the evidence adduced at the hearing on defendant's motion to quash his arrest and suppress evidence. In addition, the court viewed a videotaped recording of the traffic stop.

¶ 10　Defendant testified as follows at the forfeiture hearing. When Officer Vorpagel stopped him on March 17, 2013, he was preparing his vehicle, by getting gas, checking the oil, and filling the tires, so that he could have the device installed the next day. The vehicle had been in storage for the past six months. Defendant "had had conversations" with the Secretary of State "on and off" regarding the installation of the device. When asked if the permit stated that he had 14 days in which to drive the vehicle to a site to have the device installed, defendant answered, "[s]omewhat correct; somewhat not correct." Defendant never intended to violate the terms of the permit.

¶ 11　Defendant's attorney argued that forfeiture was not statutorily authorized and that defendant did not intend to violate the permit when he drove on March 17, 2013.

¶ 12　The court ordered the forfeiture of defendant's vehicle, reasoning as follows. The permit required a device in his vehicle and allowed defendant to drive to and from the installer of the device within 14 days of the date the permit was issued. The court noted that nothing in the videotaped recording of the stop indicated that defendant was on his way to prepare the vehicle for a device installation. In fact, defendant told the officer that he was " 'going to get [the device] installed when the weather breaks.' " Defendant did not tell the officer that he had conversations with the Secretary of State or that because of the type of vehicle he owned there were problems with getting a device installed. The court further stated that there was "no documentation" to support defendant's testimony that he had "an application" to the Secretary of State for the installation of the device "to be done the next day." Defendant could have

subpoenaed witnesses from the installation facility to verify his testimony, but he did not do so. Overall, the court found defendant's testimony "to be less than forthright and credible."

¶ 13    In addition, the court stated that the forfeiture was authorized by the relevant statutes. Section 36-1 of the Code (720 ILCS 5/36-1 (West 2012)) provided that a vehicle is subject to seizure if it has been used in the commission of one of the offenses enumerated in that section, which included an offense described in section 6-303(g) of the Vehicle Code (625 ILCS 5/6-303(g) (West 2012)). Section 6-303(g)(3) of the Vehicle Code permitted seizure and forfeiture if the person's driving privilege was suspended or revoked under section 11-501.1 of the Vehicle Code (625 ILCS 5/11-501.1 (West 2012)). Because defendant violated the permit, defendant drove his vehicle when his summary suspension was in effect, meaning that the forfeiture of defendant's vehicle was statutorily authorized.

¶ 14    In October 2013, the State amended the charge in defendant's criminal case from misdemeanor driving while his license was suspended (625 ILCS 5/6-303(a) (West 2012)) to a misdemeanor for driving without a device (625 ILCS 5/6-206.2(a) (West 2012)). Defendant then stipulated to facts sufficient to find him guilty of driving without a device, and the court sentenced defendant to 12 months' supervision. Defendant filed several posttrial motions challenging the forfeiture, which the trial court denied.

¶ 15    Defendant timely appealed.

¶ 16                                    II. ANALYSIS

¶ 17                                    A. Forfeiture Order

¶ 18    Defendant appeals the forfeiture order. "A forfeiture proceeding is civil in nature and is an *in rem* proceeding against the item used in the commission of a crime." *People v. 1998 Lexus GS 300*, 402 Ill. App. 3d 462, 465 (2010). The State must prove by a preponderance of the

evidence, rather than beyond a reasonable doubt, that a vehicle is subject to forfeiture. *People v. 1995 Ford Van*, 348 Ill. App. 3d 303, 306 (2004). The burden then shifts to the owner to show, by a preponderance of the evidence, either that he did not know, and did not have reason to know, that the vehicle was used in the commission of a statutorily enumerated offense or that an exception applies. 720 ILCS 5/36-2 (West 2012).

¶ 19    We will not disturb a trial court's findings in a forfeiture action unless they are against the manifest weight of the evidence. *1998 Lexus GS 300*, 402 Ill. App. 3d at 465. For defendant's arguments that are based on statutory interpretation, our review is *de novo*. *People v. McCarty*, 223 Ill. 2d 109, 124 (2006).

¶ 20    Defendant first argues that he was charged with and found guilty of driving without a device under section 6-206.2(a) of the Vehicle Code (625 ILCS 5/6-206.2(a) (West 2012)), which is not an offense that subjects his vehicle to forfeiture under section 6-303(g) of the Vehicle Code (625 5/6-303(g) (West 2012)). Curiously, defendant also argues that he was not "previously convicted" of an offense that would have allowed forfeiture under section 6-303 of the Vehicle Code (625 ILCS 5/6-303 (West 2012)). While not clear, it appears that defendant argues that the forfeiture was not statutorily authorized.

¶ 21    In arguing that driving without a device is not a triggering offense for seizure and forfeiture under section 6-303(g), defendant improperly conflates the criminal case with the forfeiture proceeding. A proceeding *in rem* stands independently of, and wholly unaffected by, any criminal proceeding *in personam*. *United States v. Ursery*, 518 U.S. 267, 295 (1996). While the legislature may impose both civil and criminal sanctions with respect to the same misconduct (*In re P.S.*, 175 Ill. 2d 79, 88 (1997)), forfeiture proceedings are generally considered civil, and a civil forfeiture does not require a prior criminal conviction or even a prior criminal proceeding

(*People v. Koy*, 2014 IL App (2d) 130906, ¶ 27). See also *People v. 1995 Ford Van*, 348 Ill. App. 3d 303, 309 (2004) (a claimant's acquittal of a criminal offense does not bar the State from pursuing a vehicle forfeiture because the forfeiture is a civil proceeding with a lower burden of proof than that in a criminal case).

¶ 22    Because the criminal and forfeiture proceedings are separate, it does not matter that the State amended the criminal charge against defendant from misdemeanor driving while his license was suspended to a misdemeanor for driving without a device, or that the amended charge is not a triggering offense for forfeiture under section 6-303(g) of the Vehicle Code. As we explain, the statutory criteria for seizure and forfeiture have been met in this case.

¶ 23    Section 36-1 of the Code (720 ILCS 5/36-1 (West 2012)) provides that any vehicle used with the knowledge and consent of the owner in the commission of an offense described in section 6-303(g) of the Vehicle Code may be seized. Section 36-2 of the Code (720 ILCS 5/36-2 (West 2012)) authorizes the State to file a complaint seeking forfeiture of the seized vehicle. Section 6-303(g) of the Vehicle Code provides that the "vehicle used in a violation of this Section is subject to seizure and forfeiture as provided in Sections 36-1 and 36-2 of the Criminal Code of 2012 if the person's driving privilege was revoked or suspended as a result of: *** (3) a statutory summary suspension or revocation under Section 11-501.1 of this Code." 625 ILCS 5/6-303(g)(3) (West 2012).

¶ 24    When defendant was stopped by Officer Vorpagel, his license was under a summary suspension pursuant to section 11-501.1 of the Vehicle Code (625 ILCS 5/11-501.1 (West 2012)). As a result, the State's forfeiture complaint charged defendant with violating section 6-303 of the Vehicle Code, which states:

"[A]ny person who drives or is in actual physical control of a motor vehicle on any highway of this State at a time when such person's driver's license, permit or privilege to do so *** is revoked or suspended as provided by this Code *** except as may be specifically allowed by a *** permit *** shall be guilty of a Class A misdemeanor." 625 ILCS 5/6-303(a) (West 2012).

See also *People v. Jackson*, 2013 IL 113986, ¶ 16 (the only elements necessary to prove the offense of driving while license is suspended or revoked under section 6-303 are (1) the act of driving a vehicle on the highway and (2) the fact of the suspension or revocation of the driver's license or privilege).

¶ 25    Therefore, contrary to defendant's assertion, the summary suspension of defendant's license pursuant to section 11-501.1 of the Vehicle Code subjected his vehicle to forfeiture under section 6-303 of the Vehicle Code, meaning that the forfeiture was statutorily authorized.

¶ 26    Defendant also argues that his license was *not* under summary suspension when he was stopped, based on the permit that was issued. For this argument, defendant relies on the above language in section 6-303(a) that provides an exception for a driver who has been issued a permit. We reject this argument, based on the plain language of sections 6-206.1 and 6-303(a) of the Vehicle Code (625 ILCS 5/6-206.1, 6-303(a) (West 2012)). See *McCarty*, 223 Ill. 2d at 124 (the best indication of the legislature's intent is the language of the statute, given its plain and ordinary meaning).

¶ 27    Section 6-206.1 of the Vehicle Code, which pertains to the type of permit issued in this case, provides that a driver who is impaired by alcohol or other drugs is a threat to public safety. 625 ILCS 5/6-206.1 (West 2012). Section 6-206.1 states that, to provide a deterrent to such conduct, a statutory summary driver's-license suspension is appropriate. *Id.* The section further

states that a driving permit may be granted, in a manner consistent with public safety, during the period of suspension. *Id*. However, section 6-206.1 also provides that "a person who drives and fails to comply with the requirements of the [permit] commits a violation of Section 6-303 of this [Vehicle] Code." *Id*.

¶ 28     It is undisputed that defendant failed to comply with the requirements of the permit by failing to have a device installed within 14 days of the date the permit was issued. See 625 ILCS 5/6-206.1(a) (West 2012) (the offender must have a device installed within 14 days of the date the Secretary issues the permit). When defendant was stopped on March 17, 2013, he was well beyond the 14-day period but had not had the device installed. The summary suspension was still in effect on March 17, 2013; it did not expire until December 2013. As the State argues, the summary suspension of defendant's license was the rule, and the issuance of the permit was the exception. Section 6-206.1 makes clear that, once defendant drove his vehicle and failed to comply with the requirements of the permit, he committed a violation of section 6-303 because he drove while his license was under summary suspension.

¶ 29     Finally, defendant argues that the court's forfeiture order was against the manifest weight of the evidence because his testimony showed that when he was stopped he was prepping his vehicle for the installation of the device and that he had the permission of the Secretary of State to drive to the installation site. Again, we reject this argument.

¶ 30     The only support for defendant's argument was his testimony, which the court did not find credible. See *People v. Wheeler*, 226 Ill. 2d 92, 114-15 (2007) (the trier of fact is best equipped to judge the credibility of witnesses, and findings concerning credibility are entitled to great weight). While defendant claims that he had been in communication with the Secretary of State and was scheduled to have the device installed the day after the stop, the court noted that

the videotaped recording[1] of the stop contradicted defendant's testimony, in that defendant told Officer Vorpagel that he intended to have the device installed when the weather improved, as opposed to the next day. According to the court, nothing in the videotaped recording indicated that defendant was preparing the vehicle for a device installation. More important, the court noted that defendant provided no documentation of his communication with the Secretary of State showing that he had an extension of the 14-day period in which to have a device installed. Also, defendant did not subpoena witnesses from the installation facility to verify his testimony. For all of these reasons, the court's forfeiture order was not against the manifest weight of the evidence.

¶ 31                          B. Fourth Amendment

¶ 32    Defendant's next argument is that the trial court erred by denying his motion to suppress evidence, because Officer Vorpagel lacked a reasonable, articulable suspicion to conduct the traffic stop. The State counters that the traffic stop was proper.

¶ 33    When reviewing a trial court's ruling on a motion to suppress, we apply a two-part standard of review. *People v. Cummings*, 2014 IL 115769, ¶ 13. We afford great deference to the trial court's factual findings and will reverse those findings only if they are against the manifest weight of the evidence. *People v. Close*, 238 Ill. 2d 497, 504 (2010). However, because we remain free to undertake our own assessment of the facts in relation to the issues and may draw our own conclusions when deciding what relief should be granted, we review *de novo*

---

[1] The videotape is not part of the record. Thus, we defer to the trial court's findings and construe any doubts from the incompleteness of the record against defendant. See *People v. Banks*, 378 Ill. App. 3d 856, 861 (2007).

the trial court's ultimate legal ruling as to whether suppression is warranted. *People v. Luedemann*, 222 Ill. 2d 530, 542-43 (2006).

¶ 34 Vehicle stops are seizures under the fourth amendment (*Cummings*, 2014 IL 115769, ¶ 15), and we analyze such stops under the principles set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). Under *Terry*, a police officer may conduct a brief, investigatory stop of a person if the officer reasonably believes that the person has committed, or is about to commit, a crime. *Terry*, 392 U.S. at 21-22; *Close*, 238 Ill. 2d at 505. The vehicle stop must be justified at its inception; the police officer must be able to point to specific and articulable facts that, taken together with rational inferences from those facts, reasonably warrant that intrusion. *Terry*, 392 U.S. at 19, 20-21; *Close*, 238 Ill. 2d at 505. The officer's suspicion must amount to more than an inarticulate hunch but need not rise to the level of suspicion required for probable cause. *Close*, 238 Ill. 2d at 505.

¶ 35 Defendant argues that the vehicle stop in this case was not justified at its inception, because he committed no traffic violations; rather, the stop was based solely on Officer Vorpagel's "hunch" that defendant was not complying with the terms of the permit. Our supreme court's decision in *Close*, which defendant relies on, compels the conclusion that the stop in this case was valid.

¶ 36 The facts in *Close* are similar to the facts in the instant case. In *Close*, the officer was on routine patrol when he ran a computer registration check of the defendant's vehicle. *Id.* at 501. The computer check revealed that the defendant's license had been revoked and that he had been issued a restricted driving permit (RDP). *Id.* The computer check showed a photograph of the vehicle's registered owner, and the officer testified that the photograph strongly resembled the defendant. *Id.* The computer check did not reveal the parameters of the permit, however. *Id.*

The officer stopped the vehicle, questioned the defendant, and then arrested him for driving while his license was revoked. *Id.*

¶ 37     The defendant moved to quash the arrest and suppress evidence, arguing that, in order to effect a lawful vehicle stop under *Terry*, the officer needed a reasonable, articulable suspicion that he was driving outside the terms of his RDP. *Id.* at 506. The supreme court rejected that argument, holding that the officer was not required to have a reasonable, articulable suspicion that the defendant was not in compliance with the terms of his RDP. *Id.* at 510. According to the supreme court, *Terry* did not require that the officer "know" that the defendant was committing a crime, and the mere possibility that the defendant's RDP allowed him to drive at the time and place that the officer observed him did not negate the officer's reasonable suspicion that the defendant was driving on a revoked license. *Id.* at 511.

¶ 38     In order to distinguish *Close*, defendant argues that an RDP is different from the permit issued in this case. In *Close*, the officer noted that an RDP was typically issued for work or hardship, and the officer took into account the fact that the defendant was driving on a Sunday and wearing a tank top, a baseball cap, and sunglasses. *Id.* at 501. However, the supreme court in *Close* did not focus on the nature of the RDP when determining that the officer had a reasonable, articulable suspicion to effect a *Terry* stop. Instead, the court stated that the facts sufficient to effect a *Terry* stop were that the officer "was aware that the license of the registered owner of the vehicle had been revoked and the person driving the vehicle strongly resembled the photograph of the owner." *Id.* at 512. According to the court, the issuance of the RDP did not cause the officer's reasonable suspicion "to evaporate" and the officer "could conduct a brief investigatory stop to verify or dispel his suspicion that [the] defendant was driving on a revoked license." *Id.*

¶ 39    As in *Close*, Officer Vorpagel's routine computer check revealed defendant's identity, the suspension of his license, and the issuance of a permit, but not the parameters of the permit. As the court stated in *Close*, Officer Vorpagel was not required to have a reasonable, articulable suspicion that defendant was not complying with the permit. *Id*. at 512. Rather, as held in *Close*, Officer Vorpagel was permitted to conduct a brief investigatory stop to ascertain whether defendant was driving on a suspended license. *Id.*

¶ 40    While defendant also cites *Cummings* for the proposition that an otherwise valid traffic stop may not be prolonged beyond the time reasonably required to complete the purpose of the stop (*Cummings*, 2014 IL 115769, ¶ 15), *Cummings* does not aid defendant. In *Cummings*, the supreme court made clear that, "unless a request for identification is related to the reason for the stop, it impermissibly extends the stop and violates the Constitution." *Id*. ¶ 26. As the State points out, the request for identification was directly related to the purpose of the stop, which was determining whether defendant was driving on a suspended license. Accordingly, there was nothing improper about the stop in this case.

¶ 41                          C. Constitutional Claim

¶ 42    Defendant's final argument is that the forfeiture of his vehicle violates the eighth amendment to the United States Constitution (U.S. Const., amend. VIII), which prohibits the imposition of excessive fines. This constitutional argument is forfeited, however, because defendant failed to raise it in the trial court. See *Sherman v. Indian Trials Public Library District*, 2012 IL App (1st) 112771, ¶ 21 ("[i]n civil cases, constitutional issues not presented to the trial court are deemed forfeited and may not be raised for the first time on appeal").

¶ 43    In any event, this court considered and rejected the same argument in *People v. One 2000 GMC*, 357 Ill. App. 3d 873 (2005). Like defendant here, the defendant in *One 2000 GMC* drove

his vehicle while his license was under summary suspension pursuant to section 11-501.1 of the Vehicle Code; the defendant was issued a judicial driving permit and violated its terms; and the State's forfeiture complaint was based on the defendant's driving when his license was suspended under section 6-303(a) of the Vehicle Code. *Id*. at 874-75. We rejected the defendant's argument that the forfeiture of his $28,000 vehicle, which was similar in value to defendant's vehicle here, violated the excessive-fines clause. *Id*. at 878-79. Therefore, even if defendant's argument were not forfeited, we would reach the same conclusion as we did in *One 2000 GMC*.

¶ 44                                    III. CONCLUSION

¶ 45    For the reasons stated, we affirm the judgment of the Lake County circuit court.

¶ 46    Affirmed.