# Illinois Official Reports

## Appellate Court

> ### *People v. Yanez*, 2014 IL App (1st) 123364

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. CECILIA YANEZ, Defendant-Appellee. |
| District & No. | First District, First Division<br>Docket No. 1-12-3364 |
| Filed | June 30, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from the grant of defendant's motion to quash her arrest and suppress evidence in a prosecution for unlawful possession of a controlled substance, the appellate court reversed the trial court's decision on the ground that the trial court erred in applying the probable cause standard rather than the reasonable suspicion standard under *Terry* in determining whether the investigative stop of defendant's vehicle was justified, since narcotics officers had information that defendant had checked into a hotel without reservations as a day-to-day guest, the truck she was driving had been seen near the Mexican border three days earlier, defendant was listed in the Drug Enforcement Administration database as being involved in narcotics trafficking and was suspected of money laundering, she was known to have purchased tape and plastic bags commonly used in banding money and hiding the scent of narcotics, and she had been seen moving a cooler in and out of her truck, and although none of these standing alone might have indicated criminal activity, their consideration as a whole, in the totality of the circumstances, provided a reasonable suspicion of criminal conduct sufficient to justify an investigatory stop under *Terry*. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CR-6542; the Hon. Carol M. Howard, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Kathleen Warnick, and Carlos Vera, Assistant State's Attorneys, of counsel), for the People.

Michelle Gonzalez, of Michelle Gonzalez & Associates, P.C., of Chicago, for appellee.

Panel

PRESIDING JUSTICE CONNORS delivered the judgment of the court, with opinion.
Justices Hoffman and Cunningham concurred in the judgment and opinion.

**OPINION**

¶ 1   The State appeals pursuant to Illinois Supreme Court Rule 604(a)(1) (eff. July 1, 2006) from a circuit court order granting defendant Cecilia Yanez's motion to quash her arrest and suppress evidence obtained when police stopped and searched a vehicle she was driving. On appeal, the State contends the trial court erred in granting defendant's motion because the court erroneously applied the probable cause standard to determine whether an investigatory stop was justified and failed to consider the totality of the evidence. We reverse and remand for further proceedings.

¶ 2   Defendant was charged with possession with intent to deliver over 900 grams of cocaine.[1] Defendant moved to quash her arrest and suppress evidence arguing that her fourth amendment rights were violated when the police unlawfully stopped her vehicle based on a hunch, without legal justification and without articulable facts to support the stop. Defendant argued that she was not violating any laws at the time of the stop, the search was unlawfully conducted without a search warrant or defendant's consent, the search was not incident to a valid arrest, and the police lacked probable cause to stop, arrest and search her.

¶ 3   At a hearing on her motion, defendant testified that on March 12, 2002, she was driving a Chevrolet Silverado on the south side of Chicago near Midway Airport with her 24-year-old daughter and 6-year-old grandson in the truck with her. The truck had an extended cab with a backseat, and her grandson was restrained in a car seat in the backseat. Defendant also had a cooler in the backseat, which contained milk, juice, soda and some sandwiches. The three were traveling to Chicago from their hometown of McAllen, Texas, which is near the border

---

[1] In its brief, the State asserts that defendant was arrested for possession of "suspect methamphetamines." The record shows that although the criminal complaint alleged defendant possessed methamphetamine, the indictment charged her with possession of "cocaine, or an analog thereof." The composition of the substance is not at issue in this appeal.

of Mexico. Defendant acknowledged she had been in Texas three days earlier, on March 9, 2012.

¶ 4    While driving down the street, defendant was stopped by an unmarked police car with flashing red and blue lights. A police officer approached her vehicle and asked her for her driver's license and vehicle registration. She handed the officer the documents, and he yelled at her to get out of the truck. Defendant complied, as did her daughter, who also unbuckled her grandson and removed him from the truck. Defendant told police that they had been visiting relatives at 53rd Street and California Avenue, and were going to the aquarium. The police officers went into her truck, opened the cooler, and removed the side padding from the cooler. The police then removed two kilograms of cocaine and some money from the cooler.

¶ 5    Defendant testified that the police officers did not have a search warrant and did not have an arrest warrant for defendant or her daughter. Defendant did not give the police permission to enter her truck or open the cooler. Defendant acknowledged that she may have given the police officer an expired driver's license because she had a second identical license she had ordered through the Internet and was not sure which license she handed the officer.

¶ 6    Chicago police officer Thomas Cunningham testified that he had been an officer for 24 years and had been assigned to the narcotics division of the organized crime section in the department since 1998. Officer Cunningham was assigned to the domestic interdiction unit, which monitors points of transportation and hubs, such as hotels, motels, bus stations and terminals where a lot of traveling and interaction between people occurs. Throughout his career, Officer Cunningham was involved in hundreds of narcotics investigations, with well over 100 of those being long-term investigations. Officer Cunningham was trained in the movement of bulk amounts of narcotics and money when he was assigned to the Drug Enforcement Administration (DEA) task force for four years and "Hida" for six years. The training provided techniques on monitoring drug couriers and narcotics traffickers, and discussed their behaviors and products they may buy which could indicate that they were narcotics traffickers or money couriers.

¶ 7    On March 12, 2012, Officer Cunningham was on duty near a hotel at 6650 South Cicero Avenue after his unit learned that a person from the border town of Mission, Texas, had checked into the hotel without advanced reservations and was registered as a day-to-day guest. The DEA considers Texas a "source state" because it is a point of entry for a lot of illegal narcotics and currency. A border town raises more red flags due to its close proximity to the border. Officer Cunningham explained that it is common for drug traffickers to arrive at a hotel without reservations and pay cash on a day-to-day basis so they do not leave a paper trail. Officer Cunningham was informed that a Chevrolet Silverado pickup truck with Iowa license plate number 326YSQ was at the hotel. The officer checked the license plate number in the El Paso Intelligence Center (EPIC), a database information system funded by the DEA, and learned the truck was seen near the Mexican border on March 9, 2012. He further learned that the truck was being driven by defendant, who was staying at the hotel. Officer Cunningham acknowledged that he knew the truck was not owned by defendant or her daughter. Officer Cunningham checked defendant's name in EPIC and found that the DEA had her listed as being involved in a narcotics trafficking organization and a money laundering organization. Defendant was suspected of laundering drug money through businesses and distributing methamphetamine.

¶ 8        In addition, Officer Cunningham learned that defendant's name had been checked for being at that same hotel on December 31, 2011, at which time the officer recalled the police had previously followed her. On December 30, 2011, the police followed defendant to a bus depot at 35th Street and California Avenue, where they overheard a telephone conversation in Spanish that they believed was a coded narcotics conversation. Defendant said the brownies were not ready and that she was going to return home because she did not have time to wait around. The police interpreted the language to mean either the money or the product was not ready, and she was returning to Texas. The police took no action that day. Officer Cunningham acknowledged he is not fluent in Spanish, but the officer who overheard the conversation was.

¶ 9        Based on all the information police had about defendant, they conducted surveillance of her hotel room. Office Cunningham saw defendant leave her room pulling a blue and white Coleman cooler. Defendant's daughter and a young child were with her. Defendant placed the cooler in the backseat of the pickup truck and drove to a Wal-Mart store a few blocks away. The police followed her inside the store and saw her purchase rubber bands and yellow plastic tape with attached dispensers. Officer Cunningham explained that such items are frequently used by money couriers and drug traffickers to band money, and the plastic is used to camouflage or mask the scent of narcotics. After defendant returned to her vehicle, the police followed her to 5300 South Maplewood Avenue. Defendant removed the cooler from her truck and brought it inside a residence with her daughter and the child. A man answered the door and let them in, and they remained inside the house for two hours. The three exited the home and returned to the truck with defendant's daughter pulling the cooler. Defendant placed the cooler back inside the truck and drove away with the police surveillance following her.

¶ 10        About a mile and a half later, Officer Keating, who was driving a covert vehicle in front of defendant, said he saw the child dancing around inside the vehicle without his child restraint. The police then conducted a traffic stop, pulling defendant's car over to the side of the road. Defendant handed Officer Martinez an expired driver's license and was asked to exit her vehicle. Officer Martinez handed the license to Officer Cunningham, who then interviewed defendant, asking her where she was coming from and where she was going. Defendant replied that she left the hotel in the morning, went directly to a relative's house in the 5300 block of Maplewood Avenue, but no one was home, so she came directly back. Officer Cunningham knew defendant was not being truthful, so he then asked the canine officer who was on the scene to deploy the dog on the vehicle. The canine search occurred within minutes after defendant's truck was stopped. The canine alerted positively to the exterior of the vehicle and then to the cooler in the backseat of the truck. Officer Cunningham inspected the cooler and found it had been tampered with, as the seams were not factory sealed and had adhesive poured over them. Upon further inspection, Officer Cunningham discovered that the Styrofoam insert had been removed and there were kilograms of cocaine and bundles of money inside the cooler. The money was wrapped with rubber bands and plastic wrapping. Officer Cunningham then advised defendant of her *Miranda* rights. Officer Cunningham acknowledged that police sometimes receive information from sources that is not correct and that people sometimes pay for hotels with cash because they do not have credit cards.

¶ 11    In rebuttal, defendant testified that Officer Cunningham was not the officer who interviewed her on the scene. Defendant first spoke with Officer Cunningham after she was arrested when he drove her truck back to the hotel and she sat in the passenger seat. Defendant further testified that another police officer found the money and drugs, not Officer Cunningham. The hotel room was registered under defendant's daughter's name, Stacy Rodriguez, and the truck belonged to a man named Francisco. Defendant testified that she was arrested two hours after she was stopped by police, after the police found cocaine in the cooler.

¶ 12    During closing arguments, the trial court stated, and defense counsel agreed, that the issue in this case was whether or not the police had a proper basis to stop defendant's car. The court stated that the canine sniff occurred within minutes after the truck was stopped, so there was no issue about the detention being illegally prolonged. The court noted that the police claimed the basis for the stop was that defendant's grandson was not properly restrained in his car seat. The court further noted that the police also claimed their investigation of defendant "added to the probable cause that they had for the stop." The court asked the prosecutor to discuss what she thought "the basis for probable cause was." The prosecutor reviewed all of the facts in the case and argued that, based on all of the information, the police had reasonable articulable suspicion developed during the course of their investigation to stop defendant's car, in addition to the child not being restrained.

¶ 13    The trial court found that defendant was more credible than Officer Cunningham regarding her grandson being properly restrained in the car and that the child was not moving around in the backseat. The court then stated, "It is clear to this court that the police stopped the car because they suspected drug activity. So the issue is was there an articulable basis for that suspicion." The court found that the fact that defendant and her daughter and grandson paid for the hotel room with cash on a day-to-day basis "in and of itself is nothing." The court further found that the fact that defendant lived in a border town and that the truck was seen near the border a few days earlier "in and of itself doesn't mean anything." The court also found that the fact defendant took a cooler in and out of her hotel room did "not necessarily mean anything in and of itself" because people who travel often have coolers. The court stated that "[a]nother basis of the officer's probable cause" was that defendant bought tape and rubber bands at Wal-Mart, which are "legal items" and did "not mean that she was engaged in illegal activity." The court further stated that Officer Cunningham did not testify about what type of drug activity defendant may have been involved in near the border, and thus, there was "insufficient evidence or information in the record for me to make a decision as to how helpful that was to a finding of probable cause." The court concluded, "As I consider all of the evidence, I cannot say that, even putting the evidence together, it constitutes enough for probable cause. The officer did not see Miss Yanez engage in any illegal activity." Based on this finding, the trial court granted defendant's motion to quash her arrest and suppress the evidence.

¶ 14    On appeal, the State contends the trial court erred in granting defendant's motion because the court erroneously applied the probable cause standard instead of the reasonable suspicion standard to determine whether the investigatory stop was justified. The State argues that, applying *de novo* review, Officer Cunningham testified regarding sufficient articulable facts which gave the police reasonable suspicion that defendant was engaged in criminal activity and justified the investigatory stop. The State asserts that, contrary to the trial court's finding,

the police are not required to witness criminal activity to make an investigatory stop. The State further argues that the court erred when it failed to consider the evidence in totality and, instead, viewed each fact separately "in and of itself."

¶ 15 Defendant does not answer the State's argument that, even accepting the court's finding regarding the reason for the traffic stop, the police had sufficient information to justify the investigatory stop. Instead, defendant claims that the State's argument that *de novo* review applies is inappropriate and that this case revolves around the trial court's credibility determinations. Specifically, defendant argues that because the trial court found defendant's testimony more credible than Officer Cunningham's on the issue of whether her grandson was restrained in his car seat, Officer Cunningham's entire testimony was not credible, and the trial court "may not" have believed "anything else he testified about."

¶ 16 We find that the record does not support defendant's argument that the trial court may have rejected all of Officer Cunningham's testimony as incredible. The record shows that the court singled out only the car seat testimony as incredible, expressly specifying, "On that issue I find that Miss Yanez is more credible." The rest of Officer Cunningham's testimony was uncontested, and the trial court relied on his testimony in setting out its findings as to why that evidence was insufficient for the investigatory stop. Accordingly, we find defendant's argument unpersuasive.

¶ 17 Our review of the trial court's ruling on defendant's motion to quash and suppress presents questions of both fact and law. *People v. McCarty*, 223 Ill. 2d 109, 148 (2006). The court's factual findings will not be disturbed unless they are against the manifest weight of the evidence, while the court's ruling on the motion is a question of law which we review *de novo*. *People v. Close*, 238 Ill. 2d 497, 504 (2010).

¶ 18 The fourth amendment of the United States Constitution, which applies to the states through the fourteenth amendment, protects all citizens from unreasonable searches and seizures in their homes, effects and persons. U.S. Const., amend. IV. Encounters between police and citizens have been divided by the courts into three tiers: (1) arrests, which must be supported by probable cause; (2) brief investigative detentions, commonly referred to as "*Terry* stops," which must be supported by a police officer's reasonable, articulable suspicion of criminal activity; and (3) consensual encounters, which involve no detention or coercion by the police, and thus, do not implicate fourth amendment interests. *People v. Luedemann*, 222 Ill. 2d 530, 544 (2006). Vehicle stops are subject to the reasonableness requirement of the fourth amendment, which is analyzed under the principles set forth by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1 (1968). *Close*, 238 Ill. 2d at 505.

¶ 19 In *Terry*, the Supreme Court recognized that under certain circumstances, police may approach a person to investigate possible criminal behavior even though they do not have probable cause to make an arrest. *People v. Scott*, 148 Ill. 2d 479, 502 (1992). Police may conduct an investigatory stop when they reasonably infer from the circumstances that the person is committing, is about to commit, or has committed a criminal offense. 725 ILCS 5/107-14 (West 2012); *Close*, 238 Ill. 2d at 505. To justify an investigative stop, a police officer must identify specific and articulable facts which, when taken together with natural inferences, make the intrusion reasonable. *Scott*, 148 Ill. 2d at 503. These facts must justify more than a mere inarticulate hunch, "*but need not rise to the level of suspicion required for probable cause*." (Emphasis added.) *Close*, 238 Ill. 2d at 505.

¶ 20    Here, the record reveals that the trial court erroneously applied the probable cause standard, rather than the reasonable suspicion standard, when it determined that the investigatory stop of defendant was improper. The record shows that the trial court repeatedly referred to the probable cause standard during closing arguments and while issuing its ruling. While specifying the issue during closing arguments, the court noted that the police claimed their investigation of defendant "added to the probable cause that they had for the stop." Moments later, the court asked the prosecutor to discuss what she thought "the basis for probable cause was." In issuing its ruling, the court stated "[a]nother basis of the officer's probable cause" was that the defendant bought tape and rubber bands. Thereafter, the court stated that Officer Cunningham did not testify about what type of drug activity defendant may have been involved in near the border, and it found there was "insufficient evidence or information in the record for [it] to make a decision as to how helpful that was to a finding of probable cause." Most significantly, the court concluded, "As I consider all of the evidence, I cannot say that, even putting the evidence together, it constitutes enough for probable cause. The officer did not see Miss Yanez engage in any illegal activity."

¶ 21    The police did not need probable cause to stop defendant's vehicle, and they did not need to observe her actually engaged in illegal activity. Under the *Terry* standard, which applies to vehicle stops, the police needed reasonable suspicion, supported by specific and articulable facts, that defendant was committing, about to commit, or had committed a criminal offense.

¶ 22    In addition to applying the reasonable suspicion standard, the trial court was also required to consider the facts articulated by Officer Cunningham as a whole, rather than considering each fact individually. When evaluating whether an officer was justified in making an investigatory stop, the court "must consider 'the totality of the circumstances–the whole picture.'" *United States v. Sokolow*, 490 U.S. 1, 8 (1989) (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)). In *Sokolow*, DEA agents recovered 1,063 grams of cocaine from the defendant's carry-on luggage after they stopped him at the Honolulu International Airport based on their suspicion that he was a drug courier. *Sokolow*, 490 U.S. at 3. The facts articulated by the agents in support of the stop included: (1) the defendant paid $2,100 cash for two airplane tickets from a roll of $20 bills; (2) he traveled under an alias; (3) his destination was Miami, a source city for illegal drugs; (4) he stayed in Miami for only 48 hours, although the round-trip flight from Honolulu to Miami takes 20 hours; (5) he appeared nervous; and (6) he did not check any of his luggage. *Sokolow*, 490 U.S. at 3. The Supreme Court found that, although not one of these facts "by itself" was proof of criminal conduct, and could be consistent with innocent travel, "taken together they amount to reasonable suspicion." *Sokolow*, 490 U.S. at 9. The court further stated that there could be circumstances where entirely lawful conduct justifies suspicion of criminal activity. *Sokolow*, 490 U.S. at 9 (citing *Reid v. Georgia*, 448 U.S. 438, 441 (1980)).

¶ 23    In this case, the record shows that the trial court considered the facts from Officer Cunningham's testimony individually, rather than considering them together as a whole. The court addressed each specific fact individually, and expressly found that each fact "in and of itself" did not "mean anything," or in other words, did not establish that defendant was engaged in criminal activity. For instance, the court found the fact that defendant took a cooler in and out of her hotel room did "not necessarily mean anything in and of itself" because people who travel often have coolers. The court also found that tape and rubber bands are "legal items" and the fact that defendant purchased those items did "not mean that

- 7 -

she was engaged in illegal activity." We acknowledge that in conclusion, the court stated, "As I consider all of the evidence, I cannot say that, even putting the evidence together, it constitutes enough for probable cause." However, we find that this statement does not show that the court properly considered the totality of the evidence because, although the court stated it considered the evidence together, it then applied the incorrect standard of probable cause.

¶ 24　　Under our *de novo* review, we find that the specific and articulable facts identified by Officer Cunningham, when considered together as a whole, established that the police had reasonable suspicion that defendant was engaged in criminal activity, which justified their investigatory stop. Officer Cunningham testified that his unit in the narcotics division had received information that a person from the border town of Mission, Texas, had checked into a specific hotel near Midway Airport without advanced reservations and was registered as a day-to-day guest. Further, a Chevrolet Silverado pickup truck with a specific Iowa license plate was being driven by defendant, who was staying at the hotel, and the truck had been seen near the Mexican border three days earlier. The DEA database listed defendant as being involved in a narcotics trafficking organization and a money laundering organization, and she was suspected of laundering money through businesses and distributing methamphetamine. In addition, the police had previously followed defendant 2½ months earlier at which time they overheard a telephone conversation which they believed was a coded narcotics conversation. During the police surveillance, Officer Cunningham saw defendant moving a cooler that she took from her hotel room, placed inside her truck, took inside a residence for two hours, and then returned to her truck. Defendant also purchased rubber bands and yellow plastic tape, which are items frequently used by money couriers and drug traffickers to band money and camouflage the scent of narcotics.

¶ 25　　The trial court was correct that, individually, each of these facts, "in and of itself," does not demonstrate criminal activity. However, similar to *Sokolaw*, we find that when considered together as a whole, the totality of the circumstances provided the police with the required reasonable suspicion sufficient to conduct an investigatory stop of defendant.

¶ 26　　Accordingly, we find that defendant's motion to quash her arrest and suppress the evidence should have been denied, and we reverse the trial court's order granting that motion. We remand this case to the circuit court of Cook County for further proceedings.

¶ 27　　Reversed and remanded.