2020 IL App (1st) 171144-U

SIXTH DIVISION
August 28, 2020

No. 1-17-1144

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of Cook County. |
| | ) | |
| v. | ) | 12 CR 6542 |
| | ) | |
| CECELIA YANEZ, | ) | Honorable Carol M. Howard, |
| | ) | Judge Presiding. |
| Defendant-Appellant. | ) | |

JUSTICE CONNORS delivered the judgment of the court.
Justice Harris concurred in the judgment.
Justice Cunningham specially concurred.

**ORDER**

¶ 1   *Held:*   Defendant did not receive ineffective assistance of appellate counsel during the State's interlocutory appeal of the trial court's grant of defendant's motion to suppress evidence where there was no showing of prejudice because the underlying issue was not meritorious; affirmed.

¶ 2   Following a bench trial defendant Cecelia Yanez was convicted of possession of 900

grams or more of a substance containing cocaine or a cocaine analog with intent to deliver and

was sentenced to 18 years in prison. On appeal, defendant contends that she received ineffective

1

assistance of counsel during her interlocutory appeal of the trial court's ruling on her motion to suppress evidence. For the reasons below, we affirm defendant's conviction and sentence.

¶ 3                                    I. BACKGROUND

¶ 4      Defendant was charged with possession of 900 grams or more of a substance containing cocaine or a cocaine analog with intent to deliver. Prior to trial, trial counsel filed a motion to suppress the alleged cocaine and related evidence, arguing that both the stop and search of defendant's vehicle were illegal. The testimony presented at that hearing is explained in detail in *People v. Yanez*, 2014 IL App (1st) 123364, but we repeat the facts here as they are necessary to our analysis.

¶ 5      At the hearing on defendant's motion to quash arrest and suppress evidence, defendant testified that on March 12, 2002, she was driving a Chevrolet Silverado on the south side of Chicago near Midway Airport with her 24-year-old daughter and 6-year-old grandson in the truck with her. *Id.* ¶ 3. The truck had an extended cab seat with a backseat, and her grandson was restrained in a car seat in the backseat. *Id.* Defendant also had a cooler in the backseat, which contained milk, juice, soda, and some sandwiches. *Id.*

¶ 6      Defendant stated that while driving down the street, she was stopped by an unmarked police car. *Id.* ¶ 4.  A police officer approached her vehicle and asked her for her driver's license and vehicle registration. *Id.* She handed the officer her documents, and he yelled at her to get out of the vehicle. *Id.* She complied, as did her daughter, who also unbuckled her grandson and removed him from the vehicle. *Id.* Defendant told police they had been visiting relatives and were going to the aquarium. *Id.* The police officers then went into her vehicle, opened the cooler, and removed the side padding from the cooler. *Id.* The police removed two kilograms of cocaine and some money from the cooler. *Id.*

¶ 7    Defendant testified that the police officers did not have a search warrant and did not have an arrest warrant for defendant or her daughter. *Id*. ¶ 5. Defendant did not give police permission to enter her truck or open her cooler. *Id*.

¶ 8    Chicago police officer Thomas Cunningham testified that he had been an officer for 24 years and assigned to the narcotics division of the organized crime section in the department since 1998. *Id*. ¶ 6. Throughout his career, Officer Cunningham was involved in hundreds of narcotics investigations, with well over 100 of those being long-term investigations. *Id*. Officer Cunningham was trained in the movement of bulk amounts of narcotics and money when he was assigned to the Drug Enforcement Administration (DEA) task force for four years and "Hida" for six years. *Id*. The training provided techniques on monitoring drug couriers and narcotic traffickers and discussed their behaviors and products they may buy which could indicate they were narcotics traffickers or money couriers. *Id*.

¶ 9    On March 12, 2012, Officer Cunningham was on duty and learned of a person from the border town of Mission, Texas, who had checked into a hotel without advanced reservations and was registered as a day-to-day guest. *Id*. ¶ 7. The DEA considers Texas a "source state" because it is a point of entry for many illegal narcotics and currency. *Id*. A border town raises more red flags due to its close proximity to the border. *Id*. Officer Cunningham learned that defendant's vehicle was seen near the Mexican border on March 9, 2012. *Id*. Officer Cunningham checked defendant's name in the El Paso Intelligence Center (EPIC), a database information system funded by the DEA, and learned that defendant was listed as being involved in a narcotics trafficking organization and a money laundering organization. *Id*.

¶ 10    Officer Cunningham also testified that defendant had checked into the same hotel on December 31, 2011, and she had been followed. *Id*. ¶ 8. On December 30, 2011, the police

followed defendant to a bus depot where they overheard a telephone conversation that they believed was a coded narcotics conversation. *Id*. The police took no action that day. *Id*.

¶ 11     Based on all the information police had about defendant, they conducted surveillance on her hotel room and saw defendant leave her room pulling a blue and white cooler. *Id*. ¶ 9. Defendant's daughter and grandson were with her. *Id*. Defendant put the cooler in the backseat of the vehicle and police followed her to a Walmart store. *Id*. In the store, police followed her and saw her purchase rubber bands and yellow plastic tape with attached dispensers. *Id*. Officer Cunningham explained that such items are frequently used by money couriers and drug traffickers to band money, and the plastic is used to mask the scent of narcotics. *Id*. After defendant returned to her vehicle, the police followed her to a nearby residence, where she removed the cooler from her vehicle and brought it inside with her daughter and the child. *Id*. A man answered the door and they remained inside for two hours. *Id*. The three exited the home, with the daughter pulling the cooler. *Id*. Defendant placed the cooler back inside the truck and drove away with the police following her. *Id*.

¶ 12     About a mile and half later, Officer Keating, who was driving a covert vehicle in front of defendant, said he saw the child dancing around inside the vehicle without his child restraint. *Id*. 10. The police then conducted a traffic stop, pulling defendant's car over to the side of the road. *Id*. Officer Cunningham asked defendant where she was coming from and where she was going. *Id*. She replied that she left the hotel in the morning, went directly to a relative's house but no one was home, so she came directly back. *Id*. Officer Cunningham knew she was not being truthful, so he asked the canine officer who was on the scene to deploy the dog on the vehicle. *Id*. The canine alerted positively to the exterior of the vehicle and then to the cooler in the backseat. *Id*. Officer Cunningham inspected the cooler and found it had been tampered with, as the seams

4

were not factor sealed and had adhesive poured over them. *Id*. Upon further inspection, Officer

Cunningham discovered that the foam insert had been removed and there were two kilograms of

cocaine and bundles of money inside the cooler. *Id*. The money was wrapped in rubber bands

and plastic wrapping. *Id*.

¶ 13    At the end of the hearing, the trial court found that defendant was more credible than the

testifying officer regarding defendant's grandson being properly restrained in the car and that the

child was not moving around in the backseat. The court found that the fact that defendant and her

daughter and grandson paid for the hotel room with cash on a day-to-day basis "in and of itself is

nothing." The court further found that the fact that defendant lived in a border town and that the

truck was seen near the border a few days earlier "in and of itself doesn't mean anything." The

court also found that the fact that defendant took a cooler in and out of her hotel room did "not

necessarily mean anything in and of itself" because people who travel often have coolers. The

court stated that the items defendant bought at Walmart – tape and rubber bands – were "legal

items" and did "not mean she was engaged in illegal activity." The trial court stated that after

considering all the evidence, it could not say, "even putting the evidence together, it constitutes

enough for probable cause." The trial court granted defendant's motion to quash arrest and

suppress evidence. The State filed an interlocutory appeal.

¶ 14    On appeal, the State contended that the trial court erred in granting defendant's motion

because the court erroneously applied the probable cause standard instead of the reasonable

suspicion standard to determine whether the investigatory stop was justified. *Yanez*, 2014 IL App

(1st) 123364, ¶ 14. The State argued that Officer Cunningham testified regarding sufficient

articulable facts which gave the police reasonable suspicion that defendant was engaged in

criminal activity and justified the investigatory stop. The State asserted that, contrary to the trial

court's finding, the police were not required to witness criminal activity to make an investigatory stop.

¶ 15    Defendant did not answer the State's argument that, even accepting the court's finding regarding the traffic stop, the police had sufficient evidence to justify the investigatory stop. Instead, defendant claimed on appeal that the State's argument that *de novo* review applied was inappropriate and that the case revolved around the trial court's credibility determinations. Specifically, defendant argued that because the trial court found defendant's testimony more credible than Officer Cunningham's on the issue of whether her grandson was restrained in his car seat, Officer Cunningham's entire testimony was not credible, and the trial court "may not" have believed "anything else he testified about."

¶ 16    This court found that the record did not support defendant's argument that the trial court may have rejected all of Officer Cunningham's testimony as incredible. The record showed that the court singled out only the car seat testimony as incredible, expressly stating, "On that issue I found that Miss Yanez is more credible." The rest of Officer Cunningham's testimony was uncontested, and the trial court relied on his testimony in setting out its findings as to why that evidence was sufficient for the investigatory stop.

¶ 17    This court found that the trial court erroneously applied the probable cause standard, rather than the reasonable suspicion standard, when it determined that the investigatory stop of defendant was improper. *Id.* ¶ 20. We noted that the trial court repeatedly referred to the probable cause standard during closing arguments and while issuing its ruling. *Id*. We stated:

> "The police did not need probable cause to stop defendant's vehicle, and they did
>
> not need to observe her actually engaged in illegal activity. Under the *Terry*
>
> standard, which applies to vehicle stops, the police needed reasonable suspicion,

supported by specific and articulable facts, the defendant was committing, about to commit, or had committed a criminal offense." *Id.* ¶ 21.

¶ 18    Ultimately, we found that in this case, looking at the totality of the circumstances, the record showed that the trial court considered facts from Officer Cunningham's testimony individually rather than considering them together as a whole. *Id.* ¶ 23. Under a *de novo* review, we found that the specific facts identified by Officer Cunningham, when considered together as a whole, established that the police had reasonable suspicion that defendant was engaged in criminal activity, which justified their investigatory stop. *Id.* ¶ 24. Accordingly, we found that defendant's motion to quash arrest and suppress the evidence should have been denied, and we reversed the trial court's order granting that motion. *Id.* ¶ 26. We remanded the case for further proceedings. *Id.*

¶ 19    Following remand to the trial court, defendant filed a motion asking the trial court "to more fully explain its findings of fact and conclusions of law" from its initial order granting defendant's motion to quash arrest and suppress evidence. The State responded that defendant could not circumvent the clear judgment of this court by seeking the trial court to make additional comments or findings, and that defendant was barred from revisiting her motion to quash and suppress evidence in the trial court.

¶ 20    A hearing was held on October 2, 2015, in which the trial court stated, "my reading of the Appellate Court's order does not direct this Court to apply the standard that they felt was appropriate. It just says they applied the standard. They felt *** there was a reasonable suspicion to justify the stop and so they reversed the Court's suppression of the evidence."

7

¶ 21    On April 1, 2016, the parties proceeded to a bench trial. At the close of trial, the trial court found defendant guilty of possession of 900 grams of cocaine with intent to deliver and sentenced her to 18 years in prison. Defendant now appeals.

¶ 22                                    II. ANALYSIS

¶ 23    On appeal, defendant claims that she received ineffective assistance of appellate counsel during her interlocutory appeal where counsel failed to argue that this court should have remanded the case for the trial court to make additional credibility determinations and then apply the correct legal standard. Defendant contends that had appellate counsel made that argument, "there is no reason to believe that this court would have departed from extensive precedent holding that the trial judge is in the best position to determine witness credibility," and that "[a]s such, this court would have ordered the appropriate remand." Defendant argues that if the trial judge had been given the opportunity to make necessary credibility determinations and apply the correct legal standard to the motion to suppress, "it would have found that the officer was mostly incredible and that the police lacked reasonable suspicion to stop the truck." Defendant contends that as such, the cocaine evidence would have been suppressed and she would not be serving 18 years in prison. The State responds that defendant cannot show ineffective assistance of counsel where the issue underlying defendant's claim is not meritorious. We agree with the State.

¶ 24    Claims of ineffective assistance of appellate counsel are evaluated under the same standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984); *People v. Coleman*, 168 Ill. 2d 509, 523 (1995). Under *Strickland*, the defendant must prove (1) that his counsel made errors so serious and his performance was so deficient, that he was not functioning as the "counsel" guaranteed the defendant by the sixth amendment to the Unites States Constitution, and (2) that

these deficiencies so prejudiced the defendant as to deprive him of a fair trial, a trial whose result is reliable. *Id*.

¶ 25    To demonstrate deficiency, a defendant must establish that counsel's performance fell below an objective standard of reasonableness. *People v. Edwards*, 195 Ill. 2d 142, 163 (2001). Prejudice is demonstrated if there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id*. Because a defendant's failure to satisfy either part of the *Strickland* test will defeat a claim of ineffective assistance, a court is not required to address both components if the defendant makes an insufficient showing on one. *Strickland*, 466. U.S. at 668.

¶ 26    We note that appellate counsel "has no obligation to raise every conceivable argument which might be made, and counsel's assessment of what to raise and argue will not be questioned unless it can be said that his judgment in this regard was patently erroneous." *People v. Collins*, 153 Ill. 2d 130, 140 (1992). "[U]nless the underlying issues are meritorious, defendant obviously suffered no prejudice due to appellate counsel's failure to raise them on direct appeal." *Coleman*, 168 Ill. 2d at 523.

¶ 27    In the case at bar, appellate counsel was not ineffective for failing to ask for a credibility determination on remand because the determinations had already been made. As we stated in or interlocutory appeal order, defendant argued on appeal from the grant of her motion to quash arrest and suppress evidence that "because the trial court found defendant's testimony more credible than Officer Cunningham's on the issue of whether her grandson was restrained in his car seat, Officer Cunningham's entire testimony was not credible and the court 'may not' have believed 'anything else he testified about.' " *Yanez*, 2014 IL App (1st) 123364, ¶ 15. We responded to this argument in our order, stating:

"We find that the record does not support defendant's argument that the trial court may have rejected all of Officer Cunningham's testimony as incredible. The record shows that the court singled out only the car seat testimony as incredible, expressly specifying, 'On that issue I find that Miss Yanez is more credible.' The rest of Officer Cunningham's testimony was uncontested, and the trial court relied on his testimony in setting out its findings as to why the evidence was insufficient for the investigatory stop. Accordingly, we find defendant's argument unpersuasive." *Id.* ¶ 16.

¶ 28    Reviewing the record again, it is clear to us that while the trial court believed that Officer Cunningham was not being truthful about the child restraint, the court did believe the officer regarding the other events leading up to defendant's arrest, and those events, taken as a whole, justified the investigatory stop. Specifically, the trial court noted that it believed Officer Cunningham's testimony regarding the fact that defendant paid for the hotel room with cash on a day-to-day basis, she lived in a border town and her truck was seen near the border a few days earlier, she took a cooler in and out of a hotel room, and she purchased certain items from Walmart.

¶ 29    Upon remand, defense counsel asked the trial court for clarification as to its findings of credibility. In rejecting that request, the trial court noted, "I found that based on my assessment of the witness's relative credibility that I just believed the Defendant more on the issue of child restraint." The trial court also stated that it "did find the officer credible when he said that they followed her to Wal-Mart. They observed her buy these items at Wal-Mart, I believe it was tape and plastic bags and rubber bands or something like that. And as I said earlier in my ruling, those items were legal. I did not find that he saw her engaged in any illegal activities."

¶ 30    The trial court found Officer Cunningham to be not credible only on the issue of whether the child was properly restrained in the backseat of the car. However, as we noted in our prior order, the trial court believed the other testimony offered by Officer Cunningham regarding the hotel stay, where defendant lived, that the vehicle was spotted at the border on March 9, 2012, the facts about the cooler, and the information about the Walmart purchases. The trial court may not have believed that those events were enough to justify an investigatory stop, but it certainly believed Officer Cunningham's testimony regarding those events. Accordingly, it would have been futile for appellate counsel to ask for a remand to the trial court for credibility determinations when those determinations were clear from the record. Because we find that the underlying issue is not meritorious, we find that there was no prejudice in failing to raise it on interlocutory appeal. See *Coleman*, 168 Ill. 2d at 523 ("unless the underlying issues are meritorious, defendant obviously suffered no prejudice due to appellate counsel's failure to raise them on direct appeal.")

¶ 31                                  III. CONCLUSION

¶ 32    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 33    Affirmed.

¶ 34    JUSTICE CUNNINGHAM, specially concurring:

¶ 35    I write separately to highlight my conclusion that this case comes to us in a procedural posture which, in my view, leaves no avenue for the relief sought by the defendant. The facts in the underlying case which came before this court previously on an interlocutory appeal, set the stage for the eventual outcome in the case as it currently appears before us on direct appeal.

¶ 36    In the initial interlocutory appeal of the case, we found that the trial court had employed an erroneous standard in its determination that the stop which resulted in the defendant's arrest

and seizure was illegal.  We reversed the trial court's suppression of the fruits of the stop and remanded the case for further proceedings.  We discussed at length, the fact that the trial court erroneously applied the *probable cause* standard instead of the *reasonable suspicion* standard. This case came to us after the trial court held a hearing on the defendant's motion to suppress and determined that there was no probable cause for stopping the defendant's vehicle in the first place. At the suppression hearing, the trial court stated that it found the testimony of Officer Cunningham regarding the defendant's allegedly unrestrained grandson as the reason for the stop, to be incredible.  The trial court unequivocally found that there was no probable cause for the stop of the defendant's vehicle based on the testimony of Officer Cunningham.  It should be noted that only two witnesses testified at the suppression hearing: Officer Cunningham and the defendant.

¶ 37     Specifically, the trial court found that since the allegedly unrestrained child was the initial reason for the stop and that reason was untrue, the stop was therefore illegal.  Although that was the fact upon which the trial court seemed to base its ruling of illegality of the stop, several other facts were testified to by Officer Cunningham during the suppression hearing.  It is those additional facts which became important in this court's reversal of the trial court's suppression of the fruits of the stop.  The trial court did not make any specific findings of credibility with respect to those additional facts upon which this court relied.

¶ 38     Some of the additional facts which were revealed during the suppression hearing in the trial court included, the defendant having a cooler in her possession, purchasing tape and rubber bands, and not having made advance reservations for her hotel room and then paying for the room with cash.  Officer Cunningham also testified at the suppression hearing that his unit had received information from federal agents, that a person from Mission, Texas, had checked into a

12

specific motel near Midway Airport without an advance reservation. The trial court did not make a specific finding of credibility as to any of those additional facts. However, the trial court also indicated in its comments during the hearing that even when *all* of the individual facts disclosed during the hearing were taken together, they did not meet the probable cause standard and therefore the stop was illegal. The State then filed an interlocutory appeal of that ruling.

¶ 39    On appeal, we found that the trial court had indeed applied an incorrect standard, specifically the probable cause standard. The standard which the trial court should have applied was the articulable *reasonable suspicion* standard. *Yanez*, 2014 IL App (1st) 123364, ¶ 21. Under the correct standard, while the facts that were elicited by the trial court at the suppression hearing remained the same, they were viewed by this court through the different lens of *reasonable suspicion*. Thus, while the facts as the trial court saw them were not enough for probable cause, this court found those same facts to be enough for *reasonable suspicion*, which is an entirely different standard. We found that, under our *de novo* review, some of the specific facts testified to by Officer Cunningham which were not specifically found to be incredible by the trial court, were enough to meet the standard of reasonable suspicion. *Yanez*, 2014 IL App (1st) 123364, ¶ 24. We focused on the broader scope of Officer Cunningham's testimony as a whole. An important part of that broader testimony was his claim that his unit had received information from federal agents, which when viewed in totality along with the other facts not found by the trial court to be incredible, amounted to reasonable suspicion that the defendant was involved in the commission of a crime.

¶ 40    In the course of its ruling, this court pointed out that the trial court never made a finding that *all* of Officer Cunningham's testimony was incredible. Therefore, when we relied upon that portion of Officer Cunningham's testimony that was not found to be incredible, it satisfied the

threshold for reasonable suspicion under our *de novo* review. We then highlighted those facts which, when taken together, supported *our* finding of reasonable suspicion that the defendant was involved in the commission of a crime. Having concluded that the facts upon which we relied met the correct standard of reasonable suspicion, we reversed the trial court and remanded the case for further proceedings.

¶ 41    It is at that point in the continuum, once the case was returned to the trial court that the trial court made a decision which in my opinion, set this case on the path in which it comes to us on direct appeal. Upon remand, we did not direct the trial court to make additional credibility findings. Defense counsel filed a motion in the trial court seeking *clarification* of the facts upon which the court's suppression ruling had rested, which this court had just reversed. Specifically, defense counsel sought to have the trial court clarify its findings as to the credibility of all of Officer Cunningham's testimony.

¶ 42    Since this court had based its ruling on the trial court's failure to find Officer Cunningham's testimony incredible *as a whole*, defense counsel sought to give the trial court an opportunity to clarify its credibility findings as to the entirety of Officer Cunningham's testimony. While hindsight presents clarity, one cannot say defense counsel provided ineffective assistance for choosing that strategy. After all, the trial court had given every indication that it found Officer Cunningham untruthful, and he was the only witness for the State at the suppression hearing. It was thus reasonable for defense counsel to infer that the proper vehicle for getting that finding on the record as to the entirety of Officer Cunningham's testimony was a motion for clarification before the trial court who had seen and heard the witnesses and could fairly judge their credibility. As the initial trier of fact, the trial court was in the best position to make that determination.

¶ 43    Unfortunately for the defendant, the trial court declined to clarify, on the record, whether it found the entirety of Officer Cunningham's testimony incredible. It is clear that whichever standard is applied, the two crucial facts upon which the stop hinged were: (1) whether the child was unrestrained in the moving vehicle; and (2) whether Officer Cunningham's unit had received information from federal agents regarding someone involved in criminal activity who fit the defendant's profile.  Stated another way, these were crucial pieces of Officer Cunningham's testimony that were relied upon by the trial court in finding that no probable cause existed and likewise relied upon by this court in finding that reasonable suspicion existed.  Upon remand, in spite of defense counsel's motion for clarification, the trial court interpreted this court's ruling as precluding it from making a finding regarding Officer Cunningham's overall truthfulness.  The trial court verbally opined rather than ruled that it found Officer Cunningham to be incredible on all the *substantive facts that mattered* regarding the legality of the stop.

¶ 44    For example, the trial court suggested that it did not believe Officer Cunningham's testimony regarding the alleged information he received from federal agents regarding the defendant. It is noteworthy that this court found that testimony to be important in finding reasonable suspicion of criminal activity.  Although this court issued no such directive to the trial court, that court's rejection of the defendant's motion for clarification of its credibility finding made it clear that the trial court believed it could not entertain that motion.  In other words, the trial court believed that it could not clarify its own findings.

¶ 45    In my view, the trial court was mistaken.  It was that mistake that cemented the finding of reasonable suspicion which this court made and the sequelae that followed.  Had the trial court made a ruling of incredibility as to *all of the substantive testimony* of Officer Cunningham, there would have been no articulable reasonable suspicion for the stop.  Therefore, the suppression of

the fruits of the stop would have been appropriate. But as we know, the trial court declined to make such a finding on the record.  Accordingly, this case now returns to this court in a posture in which there is neither a substantive nor procedural vehicle by which to undo what the trial court has done.  Had the trial court clarified its ruling and made it clear that it found Officer Cunningham to be incredible on all the crucial facts that this court relied upon in finding reasonable suspicion, the outcome would certainly have been different.

¶ 46    Unfortunately for the defendant, the trial court interpreted our ruling as precluding it from making such a clarification.  Significantly, during the court's commentary in addressing the defendant's motion for clarification but not ruling on it,  the court suggested that *if* it did address the credibility of Officer Cunningham's testimony more broadly, on all of the substantive facts, it would find the testimony incredible.  I would assume that such a broad finding of incredibility would include the facts upon which this court based its finding of reasonable suspicion. However, the trial court never made such a clarification. Therefore, the case proceeded on the path of reasonable suspicion based upon those parts of Officer Cunningham's testimony which the trial court had not specifically found to be incredible and upon which this court relied in rendering its finding of reasonable suspicion.

¶ 47    We are bound to rule on the case in the posture in which it is presented to us, notwithstanding the inference and undertone that the trial court really found *all* of Officer Cunningham's substantive testimony, incredible.  As noted, unfortunately for the defendant, the trial court *never* made such a ruling.  The trial court's interpretation of this court's ruling as precluding it from clarifying its prior ruling, rang a bell procedurally, which cannot be un-rung. Accordingly, the case as presented to this court rests on facts which support a finding of reasonable suspicion.  For this reason, I concur in the ruling of the majority.